**LAND O'LAKES CREAMERIES, INC., a corporation, Plaintiff,**

v.

**OCONOMOWOC CANNING COMPANY, a corporation, Defendant.**

No. 59-C-234.

United States District Court
E. D. Wisconsin.

Sept. 25, 1963.

See also 199 F.Supp. 124.

Lyman A. Precourt, Milwaukee, Wis., Harold Jordan, St. Paul, Minn., for plaintiff, Arnold B. Christen, Washington, D. C., of counsel.

Gerrit D. Foster and Paul R. Puerner, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This action for cancellation of trademark registrations and for unfair competition was tried to the court. Jurisdiction is based upon the federal trademark laws, the Trademark Act of 1946, Title 35 U.S.C.A. § 146, pursuant to Title 15 U.S.C.A. §§ 1064, 1071, 1119, and 1121, and upon diversity of citizenship of the parties.

Plaintiff is a Minnesota corporation with its principal offices located in Minneapolis. It was incorporated in June of 1921 under the name of Minnesota Cooperative Creameries Association, but changed its corporate name to Land O'Lakes Creameries, Inc., in March 1926. Its primary business is the receiving of butter, which is its chief product, cheese, eggs, and poultry from its stockholders, comprised of about 450 local farmers' cooperative creameries. It grades, inspects, packages, and sells these products to wholesale and retail food establishments throughout the United States.

Among plaintiff's distributors are the Baltimore Wholesale Grocery Company, Baltimore, Maryland, which began handling plaintiff's butter under its trade-

mark some time in the 1930's and Rochester Grocers Cooperative, Inc., Rochester, New York, which started to sell plaintiff's products about three years ago. It also sells to other food distributors in Rochester, Buffalo, Syracuse, and Jamestown, New York.

Plaintiff adopted the name "Land O'Lakes" as a trademark in 1924 as the result of a public prize contest. On November 8, 1924, it filed application for registration of the mark on dairy products, butter, dressed poultry, cheese, and eggs, claiming adoption and use since February 1, 1924. Registration No. 197,022 was granted on April 7, 1925. Plaintiff obtained four additional registrations—Nos. 238,023, 295,002, 321,392, and 444,420. All of its registrations are fully effective at the present time.

Defendant is a Wisconsin corporation with its principal offices located in Oconomowoc, Wisconsin. Since its incorporation in 1920, its principal business has been the canning of vegetables, some of which are sold under its own trademarks. It also cans vegetables for various retail and wholesale food establishments which sell these items under their own private labels. Defendant began using its trademark "Land O'Lakes" on canned peas in the year 1920, and on other canned vegetables produced by it in the year 1928. It has used the mark on these goods continuously to the present time. Defendant has been and is now selling canned foods produced in its plants, which foods bear the mark "Land O'Lakes," in the following areas: Midwest territory, excluding North and South Dakota, Montana, and Idaho; southwest territory as far as Texas; southeast territory; and east territory. Some of its accounts are at Auburn, New York (six years' use); Jamestown, New York (fifteen years' use in about forty-five supermarkets); and Buffalo, New York (fifteen years' use).

Beginning in the year 1924, defendant granted oral authorization to Howard E. Jones & Company (hereinafter called "Jones"), a partnership located in Baltimore, Maryland, to use the mark "Land O'Lakes" on various canned goods in the State of Maryland and adjacent areas. Defendant has never owned any interest in Jones.

Jones is a food broker which obtains customers for various canning factories and receives a brokerage fee from said factories. The customers obtained by it are located primarily in and about Baltimore, Maryland. Jones does not maintain warehouse facilities and does not itself take possession or title to the products which it handles.

The oral authorization given to Jones by defendant to use the mark "Land O'Lakes" remained in effect continuously up to June 21, 1937, when it was superseded by a series of written license agreements which continue to this date. In 1937, Jones began use of the trade style name "Ocono Co." There was no separate entity by that name. Canned foods not produced by defendant, which were being distributed by Jones, were labeled with the mark "Land O'Lakes" and carried the following inscription:

"OCONO CO
Distributors
Baltimore, MD"

and the following statement in smaller print:

"Trade mark Registered
U. S. Patent Office
Oconomowoc Canning Company
Oconomowoc, Wisconsin."

Jones tested the products so labeled by using government grading standards and cutting by opening cans and testing as to flavor and appearance. In the event there was any question as to the quality of the goods, Jones turned the cut samples over to an independent testing concern for inspection and report.

Jones, as a broker, represented a large number of canners and furnished them with labels containing the above-stated markings. Some, but not all, of these canners packed their products under continuous inspection of the United States Department of Agriculture or maintained their own inspection laboratories. These

canners are permitted to use the labels furnished by Jones only on goods sold through it as a broker. In the Baltimore area, goods bearing "Land O'Lakes" labels, brokered by Jones, are sold exclusively to Baltimore Wholesale Grocery Company which supplies and distributes a line of grocery items to a group of cooperative stores known as the "G. A. Stores."

Continuously for many years Jones has undertaken to procure a complete line of canned foods under the mark "Land O'Lakes" for Baltimore Wholesale Grocery Company. Jones purchases and pays for its own "Land O'Lakes" labels which it furnishes to the canners. The advertising which is done in Baltimore newspapers of the products bearing such labels is paid for through advertising allowances which Jones obtains from the respective canners.

Beginning in September 1961, and continuing to the present time, W. S. Mountfort Company, acting as broker for defendant in the territory surrounding Buffalo, New York, supplied defendant's products to Rochester Grocers Cooperative, Inc., which supplies a full line of groceries to a group of approximately seventy-five independent retail stores in Rochester, New York, which have an affiliation known as "R G C" stores. Rochester Grocers Cooperative, Inc., is the only customer of the W. S. Mountfort Company handling defendant's "Land O'Lakes" products in the Rochester area.

Defendant supplies fibre mats to its customers for their use in printing pictures of its "Land O'Lakes" products in newspaper advertisements, but it does not control the manner in which such mats are used.

On May 14, 1924, defendant filed application for registration of the trademark "Land O'Lakes" on canned vegetables, claiming adoption and use of the mark since July 15, 1920. Registration No. 189,018 was granted on said application on September 9, 1924. Defendant's subsequent registration No. 355,650, dated March 22, 1938, covers substantially the same products but contains slight changes of design of the mark without change of name.

On April 16, 1938, defendant filed application for registration of the trademark "Land O'Lakes" on approximately thirty-four additional items of canned foods. This application was opposed by plaintiff. The matter was litigated in the patent office, evidence being adduced on both sides. The application was finally denied by the commissioner of patents on December 6, 1940. Subsequently defendant amended this application to cover canned vegetables and canned tomato juice only, and registration No. 388,363 was then issued. On August 30, 1948, defendant filed further application for registration of the trademark "Land O'Lakes" based upon its sworn statement that it had adopted and was using said mark on various canned goods covered by the application and that, to the best of its knowledge and belief, no other person had the right to use said mark in commerce. The items included such canned items as vegetables and vegetable juices, fruits and fruit juices, berries, spaghetti with tomato sauce and cheese, baked beans, tomato paste, catsup and chili sauce, apple sauce, cranberry sauce, and fruit cocktail. Registration No. 541,681 was granted on this application on May 1, 1951. All of defendant's registrations are presently effective.

On or about June 1, 1957, plaintiff filed four petitions in the United States Patent Office for cancellation of the four registrations of defendant's trademark "Land O'Lakes." Defendant's answer to said petitions included a request for cancellation of all of the plaintiff's registrations of the mark. On August 3, 1959, the patent office Trademark Trial and Appeal Board rendered its decision denying the respective parties' claims. See Land O'Lakes Creameries, Inc. v. Oconomowoc Canning Company, 122 U.S.P.Q. 411 (1959).

The foregoing facts have been stipulated by the parties. Other facts are as stated in this decision.

In the instant action plaintiff seeks review and reversal of the decision of the

Board. Additionally, it requests a permanent injunction of use of the mark by defendant or its transferees. Defendant, which did not seek court review of the adverse decision of the Board on its claims, now asserts the defense of laches and counterclaims for cancellation of plaintiff's registrations and injunction of plaintiff's use of the mark, as well as for an accounting and for compensatory and punitive damages. Both parties request an award of attorneys' fees.

■ In respect to that part of the case which is a review of the patent office cancellation proceedings, this court must accept as controlling the findings of fact of the patent office unless there is convincing evidence to the contrary. Watkins Products, Inc. v. Sunway Fruit Products, Inc., 311 F.2d 496 (7th Cir. 1962). The Board's denial of plaintiff's claims for cancellations was based on a conclusion of law supported by undisputed evidence, to wit: A junior user of a trademark could not in any event be damaged by the registrations of the senior user. Thus, the junior user had no standing to maintain the petition for cancellation.

In respect to defendant's counterclaim, the Board found that the record showed that the goods of the parties had been sold and advertised extensively in the same trade areas for more than thirty-five years, and had been distributed, at least in one instance, through the same wholesale house without any instances of actual confusion having come to the attention of either party. The Board further found that the goods of the parties pertained to different fields of trade and that plaintiff's activities under the mark "Land O'Lakes" were outside of defendant's "field and scope."

This court, in its earlier decision in the case on defendant's motion to dismiss the complaint for failure to state a cause of action, held that a junior user of a trademark may have standing to sue for cancellation of a senior user's registrations on proper allegations of likelihood of confusion arising from concurrent use which resulted in an invasion of the junior user's rights in its mark. See Land O'Lakes Creameries, Inc. v. Oconomowoc Canning Company, 199 F. Supp. 124 (E.D.Wis.1961).

As a basis for its claims for cancellation and for unfair competition, plaintiff contends that there is confusion as to the source of the parties' goods arising from concurrent use of the mark. It predicates its request for cancellation upon the statutory grounds of alleged abandonment and on fraud in obtaining one of the registrations. Capitalization on plaintiff's good will and reputation, established by extensive use and promotion, is the activity claimed to constitute unfair competition.

*Confusion*

■ On the record of this case, the court finds, contrary to the finding of fact of the Board on defendant's counterclaim, that there is likelihood of confusion as to the source of origin of plaintiff's and defendant's goods bearing the mark "Land O'Lakes." This finding is based on evidence which was not before the patent office in the prior proceeding.

Seven ladies from Baltimore, Maryland, members of the purchasing public in a trade area where Land O'Lakes butter and Land O'Lakes canned goods have been sold concurrently for over thirty years, stated that they thought the canned goods originated with plaintiff which they identified as the "butter people." Their belief was based on long familiarity with the butter and with plaintiff's extensive advertising and promotional activities.

A consumer survey conducted by plaintiff in the Baltimore area also tends to demonstrate confusion of the purchasing public as to the source of goods bearing the mark "Land O'Lakes." It may be assumed that a similar state of mind would prevail in trade areas where the mark "Land O'Lakes," through long use and advertising, had become associated in the mind of the public with one of the parties and where the goods of both parties were being sold concurrently.

*Cancellation*

■ Plaintiff contends that defendant's failure to exercise personal supervision and control over the quality of the Land O'Lakes goods handled by Jones constitutes abandonment.

The operation under the licensing arrangement between defendant and Jones has been in effect since 1924. Originally it was under oral agreement, then under written contract since 1937. The presently-effective contract authorizes Jones to sell canned goods bearing the mark in a designated geographical area. Jones is required to use its "best efforts to preserve the high standard and good will" of the mark. Since 1949, defendant has retained the right of supervision over all labels and products bearing the mark.

Defendant does not know in advance at any given time the source of the goods to which its licensee attaches the mark. It has undertaken no testing of these products on its own account. In lieu of direct control, defendant has relied on the control exercised by Jones, on its familiarity with the quality products of the suppliers of Jones, and on its knowledge of the circumstances which serve to discipline Jones in the use of the mark. Any complaints as to the quality of the goods would come to the attention of the Baltimore Wholesale Grocery, Jones' exclusive customer for these goods, through the stores which the wholesale company served as distributor; or the complaints would come to defendant, the owner of the mark, whose name appeared on the label as registrant thereof. To safeguard its market as well as its contractual right to use the mark, it was incumbent upon Jones to handle quality merchandise.

Plaintiff has not claimed, nor has it been shown on the trial, that the quality control of the Land O'Lakes goods by Jones is deficient. The production, brokerage, and merchandising arrangement involving use of defendant's mark "Land O'Lakes" among defendant, Jones and his suppliers, and Baltimore Wholesale Grocery has continued without interruption for almost forty years to the apparent satisfaction of these parties. Plaintiff did not offer one positive instance of deviation from quality of the canned goods bearing the mark in the Baltimore area. Of the seven housewives who testified on the issue of confusion, one had discontinued use of the canned goods because she found out that they did not originate with the "butter people," not because she was dissatisfied with the quality. Another did not like the canned corn and string beans but did not indicate a reason for the dislike. The others, who had occasionally purchased the canned goods in the past or were doing so presently, indicated no dissatisfaction with quality.

■ The failure of a licensor to take reasonable measures to control the activities of the licensee in respect to the nature and quality of the goods bearing the mark may constitute an abandonment thereof. Dawn Donut Company, Inc. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959). The practice of the parties and the contract conditions render the license arrangement more than a naked license. Under the circumstances shown here, defendant's reliance on its licensee's quality control may be deemed the taking of reasonable measures to protect the quality of the goods bearing the mark. The defendant's activities with respect to control do not constitute an abandonment of the mark.

■ The designation of "OCONO CO" as part of the labels used by Jones may have tended to obscure the source of origin and have lead the public to believe that the goods emanated from defendant rather than from other suppliers of the licensee. Since the purchasing public generally tends to look only to the prominent print of the label, as demonstrated clearly by the testimony of the housewives, this practice would appear to have had little significant consequence. The evidence shows it to be a common practice in connection with canned goods that the packer or distributor whose identity is found in fine print is someone other than the owner of the brand name or registered trademark such as "Carna-

tion," "Libby," or "Land O'Lakes" which is prominently displayed on the label. In no event would the use of this style name lead the public to believe that the goods originated with plaintiff. This labeling practice does not constitute misuse of the trademark which would result in an abandonment of defendant's rights therein.

 In obtaining its fourth registration—No. 541,681—in 1951, defendant falsely declared under oath that it had used the mark on a great variety of products covered by the registration, whereas in fact the use on such goods had been by its licensee. This registration covers a line of canned products which are a natural expansion of defendant's prior use of its mark. Misrepresentations as to prior use of the mark did not result in an invasion of a trade area related to dairy products and have not been shown to cause other injury to plaintiff.

The patent office did not deem the defect in the registration actionable. See decision and order of the Examiner of Interferences on plaintiff's motion for summary judgment in the prior patent office cancellation proceeding, docketed October 3, 1957. Under the circumstances here, the false statements do not amount to fraud in obtaining the registration to warrant cancellation thereof. Cf. Bart Schwartz International Textiles, Ltd. v. Federal Trade Commission, 289 F.2d 665 (C.C.P.A.1961), where the court granted cancellation because of false statements which concerned the rights of others to use of the mark in respect to the same kind of goods as those of the registrant.

 Proceedings for cancellation of registration of a trademark are concerned with more than the rights of the general public. The statute affords relief to a party which "believes that he is or will be damaged by the registration." Title 15 U.S.C.A. § 1064, as amended 1962.

 The likelihood of confusion shown by the evidence adduced on this trial is a natural incident of concurrent use of the mark on goods sold in common trade areas and, on occasion, through the same outlets. In the case of identical marks on goods which are closely related but noncompetitive, mere likelihood of confusion resulting from lawful use of the mark would not necessarily justify termination of either party's rights therein. Avon Shoe Co., Inc. v. David Crystal, Inc., 279 F.2d 607 (2d Cir. 1960). If, as in the Avon case, a senior user of a mark must bear the consequences of concurrent lawful use by a junior, the latecomer's use of the mark must certainly be subject to the rights of the senior user.

 In cancellation proceedings, likelihood of damage is a condition to recovery. It may not be presumed as resulting from confusion in respect to marks granted concurrent registration by the patent office for use on noncompeting goods. Attachment of secondary meaning; that is, identification of the mark with a particular user, does not serve to establish the fact of injury or to render the confusion actionable. It is not to be imagined that the public will buy less butter because it is confused as to the origin of the canned goods or because it thinks that the canned goods originated with the producer of the butter. The Baltimore ladies did not appear to have slighted the "butter people" before their state of confusion was enlightened by the polltakers conducting plaintiff's survey in the area.

The acts of alleged abandonment have not been shown to result or to be likely to result in use of the mark on inferior or otherwise objectionable canned goods which might tarnish plaintiff's reputation and good will. The labeling practices of Jones did not lead the public to identify plaintiff as the source of the goods. False statements in a registration have not resulted in interference or limitation with the natural expansion of plaintiff's rights in its mark. There has been no invasion of any rights plaintiff has in its registered mark. Plaintiff is not entitled to cancellations of any or all of defendant's registrations.

## Unfair Competition

The activities claimed to constitute unfair competition are the alleged taking advantage of plaintiff's good will and reputation established by use and advertising. Plaintiff contends that defendant accomplishes this "coattailing" by moving into areas where plaintiff's products have found acceptance and by side-by-side newspaper advertising of the parties' products in areas where they are sold concurrently.

Land O'Lakes canned goods were being sold in the Baltimore area before plaintiff's Land O'Lakes products became identified with the "butter people"; that is, plaintiff. Although defendant began sales of its canned goods to Rochester Grocers Cooperative, Inc., at Rochester, New York, about one year later than did plaintiff, both parties had been selling their goods in this general area of upper New York State for some time. Plaintiff has offered no other proof of an "invasion" of territory where its reputation has been established.

Side-by-side newspaper advertising of goods bearing plaintiff's and defendant's marks has been taking place for more than twenty years. Defendant furnishes mats to its customers for advertising purposes. It does not control the manner in which these materials are being used. The persons who control the advertising which plaintiff finds objectionable are customers of plaintiff as well as of defendant.

■ The sum total of the activities of alleged unfair competition represents consequences of the natural expansion and development of the mark "Land O'Lakes" by both parties rather than misuse or other wrongful conduct by the defendant. Plaintiff commenced use of its mark without knowledge of defendant's rights therein. A diligent search of the trademark field would have revealed defendant's use and registration proceedings at least at the time when plaintiff adopted the designation "Land O'Lakes" as its corporate name and began its extensive promotional and advertising practices involving the mark "Land O'Lakes."

Plaintiff has never enjoyed exclusive use of the mark "Land O'Lakes." A latecomer as to defendant at the outset, it now shares the mark with other users and registrants as well. Plaintiff took the risk of developing its interest in the mark subject to the legitimate rights of defendant. Thus, plaintiff's rights in the mark are not entitled to the strong protection as granted in Polaroid Corporation v. Polaraid, Inc., 319 F.2d 830 (7th Cir. 1963).

■ In weighing the interests of the respective parties in this case, shear size of operations and investment does not tip the scales in favor of the latecomer to warrant termination of the earlier user's lawful rights in the mark. As noted with reference to the cancellation claim, the likelihood of confusion as to the source of origin of goods bearing the mark has not been shown to cause or threaten to cause injury to plaintiff's economic status, its reputation and good will, or to any other lawful interest in its mark. Statistics cited by plaintiff demonstrating a decline in butter sales in the Baltimore area have not been related to any activities of the defendant. While, under proper circumstances, confusion of the public may warrant the grant of an injunction where a mark is used on noncompeting goods—see Polaroid Corporation v. Polaraid, Inc., supra, at 835—an evaluation of the respective interests of the parties, as well as the public interest against being misled as to the source of goods, in this case does not require or justify interference with long-established rights of the defendant.

Plaintiff has especially cited the decision in Jenney Mfg. Co. v. Leader Filling Stations Corporation, 291 Mass. 394, 196 N.E. 852 (1935), as defining the rights of a junior user of a trade name or mark as against the senior user thereof. The case is to be distinguished because the senior's use of the name, prior to attachment of secondary meaning associating it with the latecomer, had been "vacillating." Defendant, in the instant case,

has used the name continuously since adoption and registration in respect to a portion of its canned goods which has been expanding progressively over the years. Plaintiff did not establish when secondary meaning began to attach to its products, but in no event would this have preceded defendant's use. Further, the name in issue in the cited case was used competitively by both parties in conjunction with the sale of gasoline.

In the absence of a showing of misuse of the defendant's mark or other wrongful conduct, plaintiff must assume the incidental benefit which it confers on the defendant by its extensive promotional activities in respect to the mark "Land O'Lakes." Under the evidence of this case, plaintiff is not entitled to an injunction of defendant's use of the mark.

█ Although plaintiff has not established that it is entitled to the relief requested, the court finds that its claims, if valid, would not have been barred by the defense of laches. It commenced the cancellation proceedings when it believed that the alleged confusion and misuse had reached proportions which constituted a threat to its interests. Mere passage of time does not constitute laches where the allegedly wrongful conduct, such as the invasion of trade areas where plaintiff's mark had found acceptance, is claimed to show a pattern of "progressive encroachment." Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., 205 F.2d 921, 927 (7th Cir. 1953).

█ Defendant has not established that it is entitled to relief on its counterclaim. The nature and extent of the likelihood of confusion under the circumstances of this case do not warrant cancellation of plaintiff's registrations, injunction on use of the mark, or other relief requested by counterclaim. As noted above, plaintiff commenced its use of the mark in innocence of the rights of others therein and has developed substantial interests therein which may benefit, rather than injure, other users or registrants of the mark.

No circumstances have been shown in the case which would warrant the award of attorneys' fees to either side.

The court hereby adopts the stipulation of facts as its findings of fact. Other findings of fact and conclusions of law are as set forth in the foregoing opinion in accordance with the requirements of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The clerk is hereby directed to enter an order for judgment dismissing the action and for defendant's costs herein.