92 N.J. Super. 570 (1966)
224 A.2d 336
RED DEVIL TOOLS, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TIP TOP BRUSH CO., INC., ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1966.
Decided November 18, 1966.
*572 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. T. James Tumulty argued the cause for appellants.
Mr. Jerome C. Eisenberg argued the cause for respondent (Messrs. Clapp & Eisenberg, attorneys; Mr. Stuart L. Pachman on the brief).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
Defendants appeal from a final judgment which
(1) enjoins them "from using and causing to be used the words `Red Devil' and any representation of a devil upon brushes sold or offered for sale by any of them, directly or indirectly, and from using and causing to be used the words `Red Devil' and any representation of a devil upon any type of advertising and sales promotion literature for brushes, and upon devices for displaying and otherwise aiding the sale of brushes"; and
(2) directs them "to account to the plaintiff for all profits realized by any of them since September 1, 1961, from the manufacture and sale, or either the manufacture or sale of brushes under the brand or name `Red Devil.'"
Plaintiff has for many years manufactured and sold an extensive line of glazier's tools and "painter's tools," using as a trademark the words "Red Devil" and a picture of a devil's head. The "painter's tools" include such items as putty knives, wall scrapers, window zippers for opening stuck windows, window tools for puttying windows, a handle faced with a carpeting material designated as a screen painter, utility patchers, taping knives for removing wall paper and patching plaster, wood scrapers, dragon skin (similar to sandpaper) attached to a holder, sandpaper holders and burn-off knives. Plaintiff neither makes nor sells paint brushes.
Defendant Tip Top Brush Co., Inc., a New Jersey corporation, manufactures and sells and its affiliated companies, the *573 other defendants, sell paint brushes under various brand names and trademarks, including "Red Devil." The two individual defendants are officers and stockholders of the corporate defendants. Tip Top is the successor of a New York corporation of the same name, the New Jersey corporation being formed when its manufacturing plant was moved from New York City to Jersey City in 1961.
Both plaintiff and defendant Tip Top have registered "Red Devil" as trademarks in the United States Patent Office. As the trial court found, "paint brushes are not included in the line of painters' and glaziers' tools and equipment covered by [plaintiff's] registrations."
Tip Top's New York predecessor corporation filed an application with the United States Patent Office to register the trademark "Red Devil" as applied to various kinds of brushes, including paint brushes, on or about April 2, 1954. The application was rejected because of a prior registration, which also included paint brushes, then held by Pittsburgh Plate Glass Company. Following negotiations between Tip Top and Pittsburgh Plate Glass Company, the latter deleted from its registration all reference to paint brushes. Tip Top's application for registration of the trademark "Red Devil" as applied to paint brushes was thereupon granted by the Patent Office on January 22, 1957.
There is a dispute as to when Tip Top and its predecessor company first began using the words "Red Devil" in connection with the sale of brushes. The trial court, rejecting defendants' testimony, found that the first significant use of the mark in connection with the marketing of brushes was in 1959. In any event, it is clear that plaintiff's use of the trademark "Red Devil" in connection with the sale of its products antedated any use by defendants of the trademark "Red Devil" in connection with the sale of brushes. It is undisputed that plaintiff has extensively advertised its products in various trade media and other publications.
Defendants attack both the grant of an injunction and the order directing an accounting of profits, quoting, inter alia, *574 from American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926):
"The mere fact that one person had adopted and used a trade-mark on his goods does not prevent the adoption and use of the same trade-mark by others on articles of a different description. There is no property in a trade-mark apart from the business or trade in connection with which it is employed."
It is true that plaintiff and defendants are not in competition and that plaintiff has never manufactured or sold paint brushes. However, under the modern view, the fact that the parties are not in competition is not a bar to plaintiff's right to injunctive relief to protect its prior trademark right if there is "proof of likelihood of confusion as to source or sponsorship despite the diverse nature of the products or services involved." Great Atlantic & Pacific Tea Co. v. A & P Trucking Corp., 29 N.J. 455, 459 (1959); 3 Restatement, Torts (1938), § 730.
The trial court found that plaintiff had established the requisite likelihood of confusion as to source or sponsorship. Its findings could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole; we may not disturb them. State v. Johnson, 42 N.J. 146, 162 (1964). So much of the judgment as grants plaintiff injunctive relief is, therefore, affirmed.
But different considerations apply to the further relief granted by the trial court to plaintiff, an accounting of the profits realized by defendants from the manufacture and sale of brushes bearing the name "Red Devil." "It does not follow that because a trademark owner is entitled to an injunction to prevent future infringement he is ipso facto entitled to an accounting of profits. An accounting will be denied where an injunction will satisfy the equities of the case." Morgenstern Chemical Co. v. G.D. Searle & Co., 253 F.2d 390, 394 (3 Cir. 1958), certiorari denied 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958).
*575 "In general, an action seeking an account of profits impliedly proceeds on the assumption that there is a definite relation  a causal connection  between the defendant's gains and those diverted from the plaintiff by reason of defendant's conduct." 2 Callman, Unfair Competition and Trademarks, § 89.1(b), at p. 1508 (1945)
So it is the generally accepted rule that where there is no competition between the goods marketed by the litigants, injunctive relief adequately protects the rights of the complaining party. There is no basis for an accounting; defendants' profits do not constitute an equitable measure of a loss sustained by plaintiff, at least in the absence of a showing that any direct or indirect injury has been caused by defendant to plaintiff's business or good will. 3 Restatement, Torts (1938), § 747; Morgenstern Chemical Co. v. G.D. Searle & Co., 253 F.2d 390 (3 Cir. 1958), certiorari denied 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958); National Dryer Mfg. Corp. v. National Drying Mach. Co., 136 F. Supp. 886 (E.D. Pa.), affirmed 228 F.2d 349 (3 Cir. 1955); Acme Chemical Co. v. Dobkin, 68 F. Supp. 601, 614 (W.D. Pa. 1946); Annotation, "Actual competition as necessary element of trademark infringement or unfair competition," 148 A.L.R. 12, 31 (1944).
There was no showing that any direct or indirect injury had been caused by defendants to plaintiff's business or good will. There was no claim that defendants' brushes were shoddy or of poor quality. The hearsay testimony as to the one or two incidents when a brush manufactured by defendant was returned to plaintiff by one of its dealers would not support such a claim.
We find no support in the record for the statement in the opinion filed by the trial court in denying defendants' application for a new trial, that the award of an accounting in this case is "merely the basic way of correcting the past wrong, as compensatory damages would be in a conventional case." We need not determine whether the evidence supports the trial court's conclusion that defendants' use of the "Red Devil" trademark was *576 "conscious and deliberate, having been carried out to take advantage of plaintiff's mark and established reputation for the purpose of selling more brushes with greater benefits to defendants than would have been possible without the use of plaintiff's mark."
Even if that conclusion is justified, it does not support the award to plaintiff of an accounting of defendants' profits. The record in this case does not warrant a departure from the general rule denying an accounting where, as in this case, there is no competition between the goods marketed by the respective litigants. The injunction gives plaintiff all the relief to which it is entitled; it satisfies the equities of the case.
The trial court, while commenting that "this was not a clear area of the law," cited in support of its action in granting an accounting of profits, L. Martin Co. v. L. Martin & Wilckes Co., 75 N.J. Eq. 257 (E. & A. 1909); Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916); 2 Nims, Unfair Competition and Trade-Marks (4th ed.), § 432, pp. 1390-1391, and Michawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942).
The citations do not support the trial court's ruling. Indeed, the cited text writer is of a view contrary to that adopted by the trial court, saying at page 1391 of the cited section:
"The courts might well hold that accountings of profits will not be ordered except where justice can be had in no other way; * * * that awards to plaintiffs in equity causes will be ascertained by the court, not by masters, and that the evidence on which they are based will be a fair approximation of the injury which plaintiff has suffered. This is all that is permitted in various other tort actions, and is all that should be permitted here."
The cases cited by the trial court involved parties selling competing goods. In L. Martin Co. v. L. Martin & Wilckes Co., supra, complainant and defendant were competing manufacturers and dealers in lampblack. Unfair competition resulted from defendant's change of its corporate name from Weglin & Wilckes Manufacturing Company to L. Martin & *577 Wilckes Co. (See 75 N.J. Eq. 39, 42 (Ch. 1908)). The portion of the Chancery decree relating to an accounting directed the master "to ascertain the profits diverted from the complainant which had been made by the defendant." 75 N.J. Eq., at p. 262. In Hamilton-Brown Shoe Co., supra, the parties were competing shoe manufacturers. The Michawaka case also involved competing goods, rubber heels. Plaintiff's trademark consisted of a red circular plug embedded in the center of the heel. Defendant sold rubber heels with a similar plug insert which closely resembled plaintiff's trademark. Moreover, as the court said:
"The heels sold by the respondent were inferior in quality to those made by the petitioner, and `this tended to destroy the good will created by the plaintiff in the manufacture of its superior product." (316 U.S., at p. 204, 62 S.Ct., at p. 1023)
Respondent also contends that Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., 349 F.2d 389 (2 Cir. 1965), certiorari denied 383 U.S. 942, 86 S.Ct. 1195, 11 L.Ed.2d 206 (1966) supports the accounting ordered in this case. In Monsanto plaintiff manufactured an acrylic fiber which it marketed under the name "Acrilan," a trademark registered under the Lanham Trade Mark Act of 1946, 15 U.S.C. § 1051 et seq. Defendant "deliberately infringed this mark by selling mattress pads falsely labeled as Acrilan-filled." The evidence established that a number of defendant's pads, purchased by plaintiff in retail stores, were of shoddy quality. The court said:
"All these pads, labeled as Acrilan mattress pads, contained less than 25 per cent of acrylic fiber and some contained none whatever. The rest of their fill consisted of cotton, acetate, nylon and other fibers, mixed in various proportions. Some of the fibers were second-hand waste material, such as fibers from floor sweepings, which contained considerable amounts of dust." (349 F.2d, at p. 390)
The issue before the court was the scope of the relief available to plaintiff under section 35 of the Lanham Act. The *578 Court of Appeals noted that one of the legislative purposes of the relief to be granted under the Lanham Act was the deterrence of trademark infringers. It ruled that to effectuate that purpose, it was not necessary that the parties be in direct competition. Said the court:
"There can be no doubt as to the need for deterrence in cases such as this. Perfect Fit has, it appears, taken up trademark infringement as its principal line of business. In at least three other instances it has carried out schemes similar to its misuse of the Acrilan trademark. It may be said to be a commercial racketeer. * * *
We do not hold that it is irrelevant whether the parties are in direct competition; compensation for diverted trade is one important purpose which an accounting may serve. To restrict accountings to this single purpose, however, fails to take account of the other purposes served by the trademark law. Under the circumstances of this case, a judgment limited to an injunction is clearly inadequate to deter those who deliberately engage in commercial piracy which defrauds thousands of consumers and injures a trade name built up at considerable cost by legitimate means." (349 F.2d, at p. 396)
We do not find in Monsanto authority for the grant of an accounting in this case. Here the action is brought to enforce a common law right, not rights under the Lanham Act. Deterrence is not a factor supporting an accounting in an action to protect common law rights in a trademark. Even if it were, the proofs in this case do not remotely resemble the factual pattern in Monsanto. They fall far short of establishing "a need for deterrence," in effect punishment of defendants who, acting with the advice of counsel, asserted the right to use the trademark "Red Devil" as applied to paint brushes.
So much of the judgment as grants plaintiff an injunction is affirmed. So much thereof as directs defendants to account for profits is reversed. No costs to either party on this appeal.