50 N.J. 563 (1967)
236 A.2d 861
RED DEVIL TOOLS, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
TIP TOP BRUSH CO., INC., ET AL., DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
The Supreme Court of New Jersey.
Argued October 23, 1967.
Decided December 18, 1967.
*565 Mr. Jerome C. Eisenberg argued the cause for Red Devil Tools (Messrs. Clapp & Eisenberg, attorneys; Mr. Stuart L. Pachman, on the brief).
Mr. T. James Tumulty argued the cause for Tip Top Brush Co., Inc.
The opinion of the court was delivered by JACOBS, J.
The Appellate Division sustained the Chancery Division's grant of an injunction to the plaintiff but set aside its order directing the defendants to account for profits. 92 N.J. Super. 570 (1966). Both parties sought and obtained certification. 48 N.J. 443 (1966).
The plaintiff is a New Jersey corporation which has for many years manufactured and sold a line of painters' and glaziers' tools under its well-known trademark "Red Devil" accompanied by a picture of a devil's head. Its trademark dates back to 1902 and was registered in the United States Patent Office as early as 1912. It advertises extensively in all of the states and in foreign countries and in recent years its annual advertising expenditures approached $300,000. Its customers are wholesalers who deal in hardware, paint and paint sundries and its products are widely sold through retail paint outlets.
The tools manufactured and sold by the plaintiff include items such as putty knives, wall scrapers, zippers for opening stuck windows, tools for puttying windows, utility patches, taping knives, wood scrapers, etc. (92 N.J. Super., at 572). The plaintiff does not manufacture or sell paint brushes. The defendant Tip Top Brush Co. is a New Jersey corporation which does manufacture and sell paint brushes under many unregistered labels. It is the successor of a New York corporation of the same name which moved its manufacturing plant to New Jersey in 1961 when the *566 New Jersey corporation was formed. In 1954 the New York corporation filed an application in the United States Patent Office to register the trademark "Red Devil" as applied to its paint brushes. Its application was originally rejected but was later granted in 1957. The first significant use by the New York corporation of the Red Devil trademark was in 1959 and the defendant Tip Top began using it about September 1961. Although the defendants' sale of paint brushes is now quite substantial, their annual advertising expenditures have apparently never exceeded $6,000.
The Chancery Division found, on the basis of ample evidence, that the defendants' brushes are distributed in the same channels of trade and are sold over the same counters to the same classes of customers as are the plaintiff's painters' and glaziers' tools; that the potentiality of confusion is great and has been taken advantage of by the defendants; that the defendants have used display racks for their Red Devil brushes without designating any manufacturer's name and address; that these racks have been placed in hardware stores where the plaintiff's products were being sold; and that specified instances of actual confusion have occurred where the defendants' brushes have been taken by the customers to be products of the plaintiff. In its conclusions, the Chancery Division found that the defendants had wrongfully appropriated the plaintiff's mark and had infringed upon it, and that their appropriation and infringement had been "conscious and deliberate, having been carried out to take advantage of plaintiff's mark and established reputation for the purpose of selling more brushes with greater benefits to defendants than would have been possible without the use of plaintiff's mark."
Rejecting various defenses which had been advanced by the defendants, the Chancery Division enjoined their continued use of the Red Devil mark in the sale of their brushes and ordered that they "account to plaintiff for all profits realized by any of them since September 1, 1961, from the manufacture and sale, or either the manufacture or sale, *567 of brushes under the brand or name `Red Devil'." In the Appellate Division the injunction was sustained as having sufficient evidential support in the record (92 N.J. Super., at 574) but the order for accounting was vacated on the ground that the injunction, without any additional relief, adequately satisfied "the equities of the case." 92 N.J. Super., at 576; see Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947); Q-Tips, Inc. v. Johnson & Johnson, 206 F.2d 144 (3 Cir.), cert. denied, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953); National Dryer Mfg. Corp. v. National Drying Mach. Co., 136 F. Supp. 886 (E.D.Pa.), aff'd, 228 F.2d 349 (3 Cir. 1955), cert. denied, 351 U.S. 906, 76 S.Ct. 694, 100 L.Ed. 1442 (1956); Morgenstern Chemical Co. v. G.D. Searle & Co., 253 F.2d 390 (3 Cir.), cert. denied, 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958).
Although the plaintiff's federal registration did not in terms cover paint brushes, its long and prior use of the Red Devil trademark in connection with its business had given it certain well recognized common law rights. These included the right to restrain unfair trade practices which might endanger the good will it had established through many years of advertising and service. See Blue Goose Auto etc. v. Blue Goose Super etc., 110 N.J. Eq. 547, 551 (E. & A. 1932); Eureka Fire Hose Co. v. Eureka Rubber Mfg. Co., 69 N.J. Eq. 159, 164 (Ch. 1905), aff'd, 71 N.J. Eq. 300 (E. & A. 1906). The fact that the plaintiff and the defendants were not in competition for the sale of paint brushes was not at all fatal to injunctive relief. See Great Atlantic & Pacific Tea Co. v. A & P Trucking Corp., 29 N.J. 455 (1959); Chemical Corp. of America v. Anheuser-Busch, Inc., 306 F.2d 433 (5 Cir. 1962), cert. denied, 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963); Metropolitan Life Insurance Co. v. Metropolitan Ins. Co., 277 F.2d 896 (7 Cir. 1960); Guild & Landis, Inc. v. Liles & Landis Liquidators, Inc., 2 Ohio Misc. 169, 207 N.E.2d 798 (C.P. 1959). Their products were related *568 and were merchandised through the same channels. Confusion was not only likely but was almost inevitable. The plaintiff had expended large sums to popularize its own products and they had become well and favorably known to the purchasing public under the Red Devil name. That name was an arbitrary one which had no descriptive significance and when the defendants deliberately chose it, from the almost unlimited number of arbitrary names available, they invited the resulting confusion, undoubtedly seeking, as the Chancery Division found, to benefit from the plaintiff's established reputation. Surely in this day equity will not hesitate to restrain shenanigans of this sort. See 51 West 51st Corp. v. Roland, 139 N.J. Eq. 156 (Ch. 1946); American Shops, Inc. v. American Fashion etc., Inc., 13 N.J. Super. 416 (App. Div.), certif. denied, 7 N.J. 576 (1951); Polaroid Corporation v. Polaroid, Inc., 319 F.2d 830 (7 Cir. 1963); cf. Chemical Corp. of America v. Anheuser-Busch, Inc., supra, 306 F.2d 433, cert. denied, 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129; Guild & Landis, Inc. v. Liles & Landis Liquidators, Inc., supra, 2 Ohio Misc. 169, 207 N.E.2d 798.
After the plaintiff's action asserting common law rights and seeking common law relief was filed in the Chancery Division, the defendants removed the proceeding to the United States District Court. On plaintiff's motion, it was remanded to the State court in line with the federal precedents. See J.H. Smith Co. v. Jordan Marsh Company, 161 F. Supp. 659 (D. Mass. 1958); M & D Simon Co. v. R.H. Macy & Co., 152 F. Supp. 212 (S.D.N.Y. 1957). The defendants now renew their contention that the Lanham Act (15 U.S.C.A. § 1051 et seq.), under which Tip Top obtained its registration in 1957, preempted the field to the preclusion of common law claims, such as asserted by the plaintiff in the Chancery Division. Although registration under the Lanham Act was declared to constitute prima facie evidence and constructive notice (15 U.S.C.A. §§ 1057(b), 1072, 1115(b)), the registered mark was clearly *569 made subject by Congress to preexisting rights under state law, at least those acquired in good faith before the effective date of the Act (July 5, 1947). See 60 Stat., c. 540, § 49, 15 U.S.C.A. § 1051, at p. 541; cf. 15 U.S.C.A. § 1065; M & D Simon Co. v. R.H. Macy & Co., supra, 152 F. Supp., at 214; Proxite Products, Inc. v. Bonnie Brite Products Corp., 206 F. Supp. 511, 514 (S.D.N.Y. 1962); Developments in the Law  Trade-Marks and Unfair Competition, 68 Harv. L. Rev. 814, 875, 878 (1955). See also Flexitized, Inc. v. National Flexitized Corporation, 335 F.2d 774, 779 (2 Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965); E.F. Pritchard Co. v. Consumers Brewing Co., 136 F.2d 512, 518 (6 Cir. 1943), cert. denied, 321 U.S. 763, 64 S.Ct. 486, 88 L.Ed. 1060 (1944); 4 Callman, Unfair Competition and Trade-Marks § 97.3(a), pp. 2068-2069 (2d ed. 1950).
The decisions in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964) do not stand in the way of relief here. In Stiffel the plaintiff brought a proceeding against Sears, Roebuck & Co. alleging that Sears had copied its "pole lamp" thereby infringing its patent and engaging in unfair competition. The lower court held the patent invalid but nonetheless granted relief under the common law. The Supreme Court reversed, holding that the copying of an article which is not protected by a federal patent or a copyright may not be prohibited as unfair competition. Compco involved the copying of fluorescent lighting fixtures and the holding was the same as in Stiffel.
Neither Stiffel nor Compco dealt with trademark principles under the Lanham Act or under state law. The opinions evidenced the Supreme Court's purpose to preclude states from granting common law monopolies to articles found unworthy of federal protection. As it said in Compco, forbidding the copying "would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and *570 in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain." 376 U.S., at 237, 84 S.Ct., at 782, 11 L.Ed.2d, at 672. But all this has little relation to a state's efforts to eliminate confusion and deception by restraining a newcomer's use of an arbitrary trademark long and favorably associated in the public mind with another's business enterprise.
In both Stiffel and Compco the Court expressly noted that a state could still take suitable steps to protect a business in the use of its trademark. 376 U.S., at 232, 84 S.Ct., at 784, 11 L.Ed.2d, at 667, 376 U.S., at 238, 84 S.Ct., at 799, 11 L.Ed.2d, at 672. This has been recognized in later lower court decisions. See, e.g., Flexitized, Inc. v. National Flexitized Corporation, supra, 335 F.2d, at 779; Distillerie Flli Ramazzotti v. Banfi Products Corp., 52 Misc.2d 593, 276 N.Y.S.2d 413, 423-424 (Sup. Ct. 1966), aff'd, 27 A.D.2d 905, 280 N.Y.S.2d 892 (App. Div. 1967). In Flexitized the Second Circuit, in holding that the defendants' use of the plaintiffs' trademark constituted unfair competition entitling the plaintiffs to relief, made the following comment as to the Supreme Court's holding:
We do not read the recent U.S. Supreme Court decision in Sears Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), as establishing any constitutional bar to the application of state law in the instant case. The Court in the Sears Roebuck & Co. case merely held that states cannot, under the guise of regulating unfair competition, grant what is in effect patent protection, and the Court expressly stated that states "may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods." 84 S.Ct., at 789. 335 F.2d, at 781, n. 4.
Other points advanced by the defendants in opposition to injunctive relief were properly rejected below and merit little attention here. Their charge that the plaintiff was *571 dilatory in protecting its rights and had in effect abandoned them lacks persuasive support in the record. Although the name "Red Devil" may have been used in fields wholly unrelated to the plaintiff's enterprise, the only shown use in a related field is the use by Technical Color & Chemical Works in its sale of paints. Prior to 1942 the plaintiff opposed an application by Technical for registration in the United States Patent Office and, after some negotiation, the dispute was settled by formal agreement between the parties. Under the agreement, the opposition to registration was terminated on Technical's undertaking that it would not use the "Red Devil" name or the representation of a devil in connection with products similar to those sold by the plaintiff; in particular, Technical agreed not to use the name or representation "on devices, equipment, tools, or apparatus used by and in connection with the painters, paper hangers and glaziers trade," and not to use "Red Devil or the representation of a devil in the same style or appearance as the same is used" by the plaintiff. Apparently Technical sells only in the greater New York area whereas the plaintiff markets its products nationally and internationally. So far as the record discloses, the agreement is being complied with faithfully. Surely the practical consensual arrangement with Technical does not evidence any abandonment of the plaintiff's right to its trademark nor does it serve to vest any right in the defendants to use the mark with the resulting confusion and deception as to source. Cf. Land O'Lakes Creameries, Inc. v. Oconomowoc Canning Co., 221 F. Supp. 576, 581 (E.D. Wis. 1963), aff'd, 330 F.2d 667, 670 (7 Cir. 1964); Skinner Mfg. Co. v. General Food Sales Co., 52 F. Supp. 432 (D. Neb. 1943), aff'd, 143 F.2d 895 (8 Cir. 1944), cert. denied, 323 U.S. 766, 65 S.Ct. 110, 89 L.Ed. 613 (1944); 3 Callman, supra § 79, pp. 1338-1355; see A.E. Staley Manufacturing Co. v. Staley Milling Co., 253 F.2d 269, 279-280 (7 Cir.), cert. denied, 357 U.S. 926, 78 S.Ct. 1371, 2 L.Ed.2d 1370 (1958); Tisch Hotels, Inc. v. Atlanta Americana *572 Motor Hotel Corp., 254 F. Supp. 743, 749-751 (N.D. Ga. 1966).
We are entirely satisfied, as were the Chancery Division and the Appellate Division below, that the plaintiff is entitled to injunctive relief, and we come now to the issue of whether it is additionally entitled, as the plaintiff claims, to an accounting for profits. The plaintiff does not suggest that it has suffered any damage to its business or good will through the sale of paint brushes which were "shoddy or of poor quality." 92 N.J. Super., at 575. Its position is that, even in the absence of such damage, the defendants should justly be directed to account for the profits they wrongfully made on the sale of paint brushes improperly marketed under the Red Devil trademark. If the plaintiff's business had included the sale of paint brushes its position would undoubtedly find broad support in the cases, some of which speak in terms of so-called trust principles (cf. L. Martin Co. v. L. Martin & Wilckes Co., 75 N.J. Eq. 257, 260 (E. & A. 1909); Adolph Gottscho, Inc. v. American Marking Corp., 26 N.J. 229, 240 (1958)) and others in terms of the profits as constituting the fair measure of the plaintiff's actual loss resulting from the defendant's wrongful diversion of sales to itself. See Restatement, Torts § 747 (1938); 4 Callman, supra § 89.1(b), p. 1857 et seq. Where, as here, the parties were non-competing the latter thesis would of course be inapplicable. See Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., 349 F.2d 389, 392 (2 Cir. 1965), cert. denied, 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966).
In Monsanto the trial court granted an injunction but refused to allow an accounting of the profits gained by the defendant through its flagrant infringement of the plaintiff's trademark. The parties were not in direct competition but, on appeal, this was held not to be fatal to the claimed accounting. Chief Judge Lumbard, after referring to the Restatement's approach (supra § 747) restricting accounts to cases in which the parties "are competing for trade and *573 the defendant's trade may thus be presumed to have been diverted from the plaintiff", pointed to an alternative approach under which an accounting in non-competition cases could be allowed under "principles of unjust enrichment traditionally applicable where property is used for profit without the owner's permission" (349 F.2d, at 392). He stressed that there may be need for allowing equitable relief beyond the injunction itself as a deterrent against deliberate infringement; and after describing the matter before him as a blatant case of deception and the defendant before him as a "commercial racketeer" he remanded the cause to the trial court for an accounting. 349 F.2d, at 397; see 66 Colum. L. Rev. 983 (1966); Note, An Accounting of Profits For Trade-Symbol Infringement Based Upon a Theory of Restitution, 1963 Wash. U.L.Q. 243.
As Monsanto indicates, the absence of competition here is not dispositive. Nonetheless, additional relief beyond the injunction, is by no means automatic for the true judicial goal is a just decree which satisfies "the equities of the case." Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386, 1391 (1947). These in turn will depend on the particular circumstances as they appear from the totality of the evidence presented. In many instances, some involving competitive and others non-competitive products, injunctive relief alone has been found to be equitably sufficient. See, e.g., Highway Cruisers of Cal., Inc. v. Security Industries, Inc., 374 F.2d 875 (9 Cir. 1967); Morgenstern Chemical Co. v. G.D. Searle & Co., supra, 253 F.2d 390, cert. denied, 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58; National Dryer Mfg. Corp. v. National Drying Mach. Co., supra, 136 F. Supp. 886, aff'd, 228 F.2d 349, cert. denied, 351 U.S. 906, 76 S.Ct. 694, 100 L.Ed. 1442; Q-Tips, Inc. v. Johnson & Johnson, supra, 206 F.2d 144, cert. denied, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377. In some instances, the courts have considered injunctive relief, plus litigation expenses including reasonable counsel fees, to be enough. See, e.g., National Van *574 Lines v. Dean, 237 F.2d 688, 694 (9 Cir. 1956); Keller Products v. Rubber Linings Corp., 213 F.2d 382, 388 (7 Cir. 1954); Admiral Corp. v. Penco, Inc., 203 F.2d 517, 521 (2 Cir. 1953); but cf. the recent holding in Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) that Congress did not intend to permit any allowance of counsel fees in federal court proceedings under the Lanham Act. 386 U.S., at 721, 87 S.Ct. 1404, 18 L.Ed.2d, at 480.
In National Van Lines v. Dean, supra, the plaintiff's complaint alleged infringement of a registered trademark and unfair competition. Injunctive relief and an accounting were sought. After trial all relief was denied but, on appeal, it was found that there had been unfair competition and that the plaintiff was entitled to injunctive relief against its continuance. The Court of Appeals considered it unnecessary to pass on the alleged infringement of a registered trademark; on the plaintiff's claim that it was also entitled to an accounting, the court had this to say:
Whether or not, if unfair competition is shown, an accounting proceeding should be ordered, preparatory to the allowance of damages, is largely a matter of discretion. Dad's Root Beer Co. v. Doc's Beverages, D.C., 94 F. Supp. 121, affirmed, 2 Cir. 193 F.2d 77.
A careful examination of the record fails to reveal any specific evidence to the effect that appellant has lost substantial business and profits as a result of appellee's unfair competition. The principal damage revealed by the testimony has consisted of inconvenience and disruption of office routine in processing misdirected inquiries. While some loss of business undoubtedly has occurred, it would not, under the circumstances, be fairly measured by appellee's profits, nor be revealed by an accounting. In our view, the injunction to be entered will satisfy the substantial equities of the case. See Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386.
We make one exception from the ruling just announced. Since we have found appellee's acts to have been willful and calculated to trade upon appellant's good will, the latter is entitled to recover its actual and reasonable attorney's fees incurred in this litigation. 237 F.2d, at 694.
It appears to us that, as in Dean, no accounting is here called for. An accounting would be time consuming and *575 expensive (cf. Nims, Damages and Accounting Procedure in Unfair Competition Cases, 31 Cornell L.Q. 431 (1946)) and its product would have no relation at all to any loss or damage actually suffered by the plaintiff. Admittedly no business was diverted from the plaintiff to the defendants and it is not suggested that any harm was done by the defendants to the plaintiff's reputation or good will. The plaintiff stresses, as did the court in Monsanto, that something more in the way of relief than the injunction itself should be granted for deterrent purposes. The conduct of the defendants here was not nearly as flagrant as in Monsanto (see 92 N.J. Super., at 577-578) for they acted under a lawyer's advice that they were within their rights in registering the Red Devil name and using it on their paint brushes. But that advice did not afford any legal defense (Lawrence-Williams Co. v. Societe Enfants Gombault, et cie, 52 F.2d 774, 778 (6 Cir. 1931), cert. denied, 285 U.S. 549, 52 S.Ct. 406, 76 L.Ed. 940 (1932)), nor did it really cloak the defendants with innocence. They well knew what they were about when they deliberately chose to market their paint brushes under an arbitrary name long and favorably associated with another in the field of painters' tools. In view of the circumstances, we consider that the equities of the case will be satisfied by the broad injunction entered at the trial, plus an allowance to the plaintiff of all of its litigation expenses, including a reasonable counsel fee to be fixed by the trial court on the basis of the trial and appellate records and affidavits of services in the trial and appellate courts.
This relief will furnish adequate protection to the plaintiff for the future and take care of its actual damage to date, will cut into any unjust enrichment of the defendants, and will tend to serve the deterrent purposes referred to in Monsanto. It is not precluded by anything in Fleischmann Distilling Corp. v. Maier Brewing Co., supra, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475, or in our court rules (R.R. 4:55-7). Fleischmann governs proceedings under *576 the Lanham Act but has no relation to unfair trade practice cases under the common law. R.R. 4:55-7 governs the allowance of counsel fees generally but in the light of its history is justly to be viewed as not standing in the way here. Cf. R.R. 1:27A. It was specifically adopted in response to abuses which were well-known and need not be recounted. See Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 167 (1960).
In Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll, 44 N.J. 442 (1965) we held that R.R. 4:55-7 "was not intended to and does not preclude the enforcement of a contractual provision in a promissory note for the payment of a reasonable attorney's fee." 44 N.J., at 448. In Gerhardt v. Continental Ins. Cos., 48 N.J. 291 (1966) we held that the defendant insurance company was obliged to pay, "as a traditional element of damage", the counsel fee incurred by the assured in defending a workmen's compensation proceeding which the insurance company had wrongfully refused to defend on his behalf. 48 N.J., at 300. See Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 175 (Ch. Div. 1951), aff'd, 9 N.J. 605 (1952); cf. Verhagen v. Platt, 1 N.J. 85, 92 (1948). While the cited cases are distinguishable, they evidence a willingness to hold R.R. 4:55-7 inapplicable where its historical goal would not be defeated or impaired. Here the plaintiff's claim was for equitable relief by way of injunction and accounting. Although the trial court granted such relief in full, it appears to us that the equities would be better fulfilled and the administration of justice better served by substituting an award of litigation costs for an ill-suited and more burdensome accounting. This course furnishes a fair measure of compensation in lieu of rather than in addition to the plaintiff's claimed right of recovery on its substantive cause of action, and, viewed realistically, does not transgress on the safeguards contemplated by the court rules. Accordingly, the judgment entered in the Appellate Division is modified and the cause is remanded to the Chancery *577 Division for further proceedings under the principles set forth in this opinion.
Modified.
For modification  Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN  7.
Opposed  None.