LYDIA GERHARDT, PLAINTIFF-APPELLANT, v. CONTINENTAL INSURANCE COMPANIES AND FIREMEN'S INSURANCE COMPANY OF NEWARK, CORPORATIONS AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued October 11, 1966—Decided December 19, 1966.

*Mr. George J. Kenny* argued the cause for appellant (*Messrs. Pindar, McElroy, Connell & Foley,* attorneys).

*Mr. John L. McDermott* argued the cause for respondents (*Messrs. Gaffey, Webb & McDermott,* attorneys; *Mr. John J. Gaffey,* of counsel).

The opinion of the court was delivered by

JACOBS, J. The trial court dismissed the insured Gerhardt's claim that her comprehensive homeowner's policy covered a workmen's compensation proceeding by a residence employee injured while working at the insured's home. The Appellate Division affirmed in a *per curiam* based on *Gordon v. New Hampshire Ins. Co.,* 89 *N. J. Super.* 246 (1965). We granted certification in both *Gerhardt* and *Gordon* but *Gordon* has since been settled and is not now before us. 46 *N. J.* 315 (1966).

In 1963 the plaintiff purchased a homeowner's policy which was issued to her in comprehensive form. The face sheet contained typewritten as well as printed material and was of

course the most prominent part of the policy. It set forth the name and home address of the insured, the policy term of 3 years and the net prepaid premium of $368.50. It stated that insurance was being provided only with respect to those coverages which were indicated by "a specific limit of liability applicable thereto." Under Section 1A through D varying limits relating to the insured's dwelling, contents, etc. were specified. Under Section II E, which was captioned "Comprehensive Personal Liability (Bodily Injury and Property Damage)," the stated limit was "$10,000.00 each occurrence." Section II F contained the limit for "Medical Payments" and II G the limit for "Physical Damage to property of others." Later on, but still on the face sheet, the following appeared: "Section II Only: (a) The described premises are the only premises where the Named Insured or spouse maintains a residence other than business property and farms. (b) Insured employs not more than two full-time residence employees."

After the face sheet, the policy continues over many printed pages in small print and with much obscure terminology. Toward its latter part we find the following insuring agreement captioned "Coverage E—Comprehensive Personal Liability:

(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

On a separate page we find special exclusions which set forth that Section II does not apply to the following:

"(a) (1) to any business pursuits of an Insured, other than under Coverages E and F, activities therein which are ordinarily incident to non-business pursuits, (2) to the rendering of any professional service or the omission thereof, or (3) to any act or omission in connection with premises, other than as defined, which are owned, rented or con-

trolled by an Insured, but this subdivision (3) does not apply with respect to bodily injury to a residence employee arising out of and in the course of his employment by the Insured;

(b) under Coverages E and F, to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles or midget automobiles while away from the premises or the ways immediately adjoining, except under Coverage E with respect to operations by independent contractors for non-business purposes of an Insured not involving automobiles owned or hired by the Insured, (2) watercraft owned by or rented to an Insured, while away from the premises, if with inboard motor power exceeding fifty horsepower or if twenty-six feet or more in over-all length and a sailing vessel, with or without auxiliary power, (3) watercraft while away from the premises and powered in whole or in part by an undeclared outboard motor owned by an Insured, or (4) aircraft; but, with respect to bodily injury to a residence employee, arising out of and in the course of his employment by the Insured, parts (1), (2) and (3) of this exclusion do not apply, and part (4) applies only while such employee is engaged in the operation or maintenance of aircraft;

(c) * * *

(d) under Coverages E and F, to bodily injury to any person (1) if the Insured has in effect on the date of the occurrence a policy providing workmen's compensation or occupational disease benefits therefor, or (2) if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation or occupational disease law, but this subdivision (2) does not apply with respect to Coverage E unless such benefits are payable or required to be provided by the Insured;

(e) * * * (f) * * * (g) * * *

(h) * * *

(i) * * * (j) * * *."

In October 1963 a domestic employed at the insured's home accidentally fell and injured herself. The plaintiff, believing that she was adequately covered by her homeowner's policy, notified her broker, B. H. Fox, Inc., 115 William Street, New York. The Fox company was also the agency which had countersigned the policy in New Jersey. It notified the insurer of the accident. In February 1964 a petition was filed by the domestic in the Division of Workmen's Compensation and the insured called upon the insurer to defend and indemnify her under the terms of her policy. The insurer declined to do so, contending that workmen's compensation claims were excluded from the policy coverage. Thereupon the plaintiff filed her complaint in the Law Division

seeking a declaration that the defendants were obligated "to defend plaintiff and pay all judgments rendered against the plaintiff by virtue of the aforesaid Workmen's Compensation action and to pay such reasonable medical expenses incurred pursuant to the terms of said policy together with interest, legal fees, investigation expenses and costs of suit."

The Law Division interpreted the policy to exclude "coverage for a workmen's compensation award, either under the medical payments provision of the policy coverage F or coverage E comprehensive personal liability." It entered a summary judgment in favor of the defendants. On appeal, the Appellate Division agreed with the Law Division's interpretation. Before us at oral argument the plaintiff withdrew her separate claim with respect to medical payments under coverage F. However, she pressed her claim that under coverage E, "Comprehensive Personal Liability (Bodily Injury and Property Damage)," the defendants were obligated to defend her in the workmen's compensation proceeding and to pay any award rendered against her within the policy limit. In addition, she contended that she is entitled to recovery for the reasonable counsel fees and costs incurred by her not only in the workmen's compensation proceeding but also in her legal action in the courts.

In *Gunther v. Metropolitan Cas. Ins. Co.*, 33 *N. J. Super.* 101 (*Law Div.* 1954), the issue presented was whether the insured's policy covered him as against a domestic's claim under the Workmen's Compensation Act. In holding that it did, Judge Gaulkin determined (1) that the claim was well within the insurer's undertaking to pay all sums which the insured "shall become legally obligated to pay as damages because of bodily injury" etc. and (2) that the policy exception relied on by the insurer, read from the point of view of a "reasonable and disinterested third party," did not serve to exclude coverage of the domestic's claim. In *Bauman v. Royal Indem. Co.*, 36 *N. J.* 12, 21 (1961), we approved the holding in *Gunther*, pointing out that the company had deliberately described its policy in sweeping terms as a compre-

hensive personal liability policy, and had sold it as such, and that while it had the legal right to exclude particular types of liability, its responsibility was to do so unequivocally. We noted that fairness to the ordinary layman who is the average insured dictates that exclusions be "so prominently placed and so clearly phrased that 'he who runs can read.' " 36 *N. J.*, at *p.* 21. See *Nat'l Union Fire Ins. Co. v. Falciani*, 87 *N. J. Super.* 157, 167 (*App. Div.* 1965).

In *Bauman* the defendant had issued a renewal policy in which the *Gunther* exclusory language had been altered. Judge Gaulkin held in the Appellate Division that the change in language was sufficient to overcome his holding in *Gunther*. 66 *N. J. Super.* 110 (1961). On the further review in this Court, we assumed that if the alteration and the company's intent not to cover workmen's compensation claims had been suitably called to the insured's attention, the company would have been absolved (36 *N. J.*, at *p.* 23) ; we held, however, that it had not so discharged its responsibility:

"After the *Gunther* case was decided, the defendant knew that (apart from instances where there were special dealings to the contrary) its New Jersey insureds who did not carry specific workmen's compensation policies were covered by their comprehensive personal liability policies against workmen's compensation claims by residence employees. It had the undoubted right, by appropriate alteration in the terms of its policies, to exclude such coverage in later renewals but, in such event, common fairness as well as legal duty dictated that it call the lessened coverage to the attention of the insureds so that they might suitably protect themselves. This it might readily have done in simple fashion; for example, it might have attached to the renewal policies or forwarded with them, slip notices to the effect that there had been language alterations and that the renewal policies were not intended to provide any coverage whatever against workmen's compensation claims by residence employees or by any other employees." 36 *N. J.*, at *pp.* 25–26.

Though *Bauman* was concerned with a renewal policy, other decisions in this Court have taken a comparably broad approach when dealing with original policies. In *Kievit v. Loyal Protect. Life Ins. Co.*, 34 *N. J.* 475, 482 (1961), while rejecting a contention that certain exclusionary phrases pre-

cluded recovery under a policy indemnifying against loss from accidental bodily injuries, we stressed that insureds are entitled to the measure of protection necessary to fulfill their "reasonable expectations" and that they should not be subjected to "technical encumbrances or to hidden pitfalls." Similarly in *Allen v. Metropolitan Life Ins. Co.*, 44 *N. J.* 294 (1965), where a receipt for the first annual premium, though conditioned, was held to afford interim coverage pending physical examination of the insured, we said:

> "While insurance policies and binders are contractual in nature, they are not ordinary contracts but are 'contracts of adhesion' between parties not equally situated. See *Steven v. Fidelity and Casualty Co. of New York*, 58 Cal. 2d 862, 27 Cal. Rptr. 172, 377 P. 2d 284, 296–298 (1962) ; *cf. Linden Motor Freight Co., Inc. v. Travelers Ins. Co.*, 40 N. J. 511, 524–525 (1963) ; *Henningsen v. Bloomfield Motors, Inc.*, 32 N. J. 358, 389 (1960). The company is expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance provisions and practices. He justifiably places heavy reliance on the knowledge and good faith of the company and its representatives and they, in turn, are under correspondingly heavy responsibility to him. His reasonable expectations in the transaction may not justly be frustrated and courts have properly molded their governing interpretative principles with that uppermost in mind." 44 *N. J.*, at *p.* 305.

The approach taken in the aforecited cases finds strong support in a recent opinion by the California Supreme Court. *Gray v. Zurich Insurance Company*, 54 *Cal. Rptr.* 104, 419 *P. 2d* 168 (1966). There the defendant issued an insurance policy with a "Comprehensive Personal Liability Endorsement." The insured struck Jones, allegedly in self-defense, and when he was sued by Jones for damages he requested the insurance company to defend him. It refused to do so, relying on a clause which excluded coverage for "bodily injury or property damages caused intentionally by or at the direction of the insured." In holding that the company was obligated to defend, the court tested the meaning of the policy, as we did in *Kievit* and *Allen,* "according to the insured's reasonable expectation

of coverage." It pointed out that the very designation "comprehensive personal liability" in itself connoted "general protection for alleged bodily injury caused by the insured" and that, in line with its prior holdings, exclusionary clauses must be "conspicuous, plain and clear." Referring to the quoted exclusionary language, it noted that the clause "is not 'conspicuous' since it appears only after a long and complicated page of fine print, and is itself in fine print"; and that "its relation to the remaining clauses of the policy and its effect is surely not 'plain and clear.'" See *Bauman v. Royal Indemnity Co., supra,* 36 *N. J.,* at *p.* 21.

Similarly the exclusionary clause in the policy before us was neither conspicuous nor plain and clear. The policy form was prepared unilaterally by the company and was sold on a mass basis as affording broad coverage to homeowners. It was designed to include protection not only against fire and theft but also, as set forth on its face page, "Comprehensive Personal Liability," to the extent of $10,000 for each occurrence. Also on the face page was the statement that the insured's stated address was her residence and that she employs not more than two fulltime residence employees, defined on the third page as employees whose duties are in connection with the ownership, maintenance or use of the premises. Surely a reasonable homeowner, reading all this on the face page, would assume that she was covered in the event her single domestic was injured while employed at her home. She might not know anything at all about the difference between a common law liability claim and a workmen's compensation claim but would expect coverage in either event. If the company had acted fairly in the effort to exclude coverage of workmen's compensation claims, it would have given the insured clear notice to that effect on the face page of the policy or by a slip attached to the face page; if it had done that, it may readily be assumed that the insured here would have taken suitable steps to obtain broader coverage, available at relatively minor cost. *Cf. Bauman v. Royal Indemnity Co., supra,* 36 *N. J.,* at *p.* 26.

While the insured is always supposed to read the policy, only a very hardy soul would have plowed through all of the fine print here in an effort to understand the many terms and conditions. On reaching the ninth page, a reading of the broad insuring agreement captioned "Coverage E — Comprehensive Personal Liability" would have furnished reassurance of sufficient coverage in the event a domestic asserted a claim for injuries suffered at the insured's home. On further reading, the insured would have found that, while exclusions (a) and (b) sought to exempt the company from liability in instances not here pertinent, they favored residence employee coverage by specifically providing that certain of those exemptions should not apply with respect to bodily injury to a residence employee arising out of and in the course of his employment by the insured.

On reading exclusion (d) the insured would have found its first provision expressly inapplicable where, as here, there was no independent workmen's compensation policy. Its second provision set forth an exclusion where workmen's compensation benefits are payable or required to be provided, but this is then said not to apply "with respect to Coverage E unless such benefits are payable or required to be provided by the Insured." This quoted language was obscure on first reading to both counsel and the Court, but in the Appellate Division and before us it was said to have been designed to apply "where a person employed by someone other than the insured, such as a parcel post delivery man, is injured on the insured's premises." 89 *N. J. Super.*, at *p.* 251.

After the purpose of the quoted language is thus explained it is understandable, but it seems highly unlikely that the ordinary insured would have so understood it on his or her own reading. As far as the plaintiff here was concerned, nowhere was there any straightforward and unconditional statement that the policy was not intended to protect the insured against a workmen's compensation claim by a residence employee injured at the insured's home. Indeed her earlier reading of the favored treatment of residence employees in

exclusions (a) and (b) would have tended to confirm her belief to the contrary. And so would her reading of the first exclusion in (d), for if the intent was to have no coverage at all as to such workmen's compensation claims, she might fairly inquire as to why her homeowner's policy contained the broad separate exclusion applicable to instances where the insured carried an independent workmen's compensation policy. *Cf. Gunther v. Metropolitan Cas. Ins. Co., supra,* 33 *N. J. Super.,* at *p.* 112.

The insurer explains the presence of the conditional terms in the policy and its references favoring residence employees by pointing to the fact that its policy form was used in various states including those where residence employees are not within workmen's compensation laws. See 89 *N. J. Super.,* at *p.* 252. But so far as the New Jersey insured here was concerned, she was entitled to treat the policy as solely a New Jersey one. She was not at all interested in any extra-state matters and her reasonable expectations are to be determined and fulfilled entirely from the point of view of a local policy purchased in a local relationship.

We are satisfied that the insured was entitled to have the company defend the workmen's compensation proceeding and pay the award within the limit specified in Section II E. The remaining question is whether she is entitled to recovery for the counsel fees and costs incurred by her not only in the workmen's compensation proceeding but also in her legal action in the courts. Since the insurer defaulted on its obligation to defend the insured in the workmen's compensation proceeding, it must bear, as a traditional element of damage, the expense including the reasonable counsel fee incurred by the insured in defending there in its stead. See *Washington Theatre Co. v. Hartford Accident, &c., Co.,* 9 *N. J. Misc.* 1212, 1216–17, 157 *A.* 111 *(Sup. Ct.* 1931); *Frommeyer v. L. & R. Construction Co.,* 261 *F.* 2d 879, 881 (3 *Cir.* 1958). We do not understand the insurer to dispute this, although it does contend that no fee for legal services may be allowed or included in the taxed costs in the action instituted and

prosecuted by the insured in the Law Division and in our appellate courts. This contention is clearly sound under *R. R.* 4:55–7 and the judicial precedents. See *Verhagen v. Platt,* 1 *N. J.* 85, 91 (1948) ; *Textileather Corp. v. American Mutual Liability Insurance Company,* 110 *N. J. L.* 483, 485–488 (*E. & A.* 1933).

The insured suggests that she might be brought within the fund in court doctrine under *R. R.* 4:55–7 but there is nothing to support this. *Cf. Grober v. Kahn,* 47 *N. J.* 135 (1966). She also suggests that inherent equitable powers might be invoked and she points to widespread out-of-state practices for the allowance of counsel fees against insurance companies which have improperly refused to make payment thereby compelling their insureds to incur the burdensome expenses of instituting law suits. See 6 *Appleman, Insurance Law and Practice* §§ 4031–4039 (1942). Those practices generally rest on statutory provisions which have no counterpart in New Jersey. When our court rules were originally adopted they embraced the view that sound judicial administration will best be advanced by having each litigant bear his own counsel fee except in those few situations specially designated in *R. R.* 4:55–7. See *Janovsky v. American Motorists Ins. Co.,* 11 *N. J.* 1, 7 (1952). There have been calls for restudy of the counsel fee rules (*Bergen Builders, Inc. v. Horizon Developers, Inc.,* 44 *N. J.* 435, 439 (1965) ; 89 *N. J. L. J.* 308 (1966)) and the subject was dealt with fully at the June 1966 Judicial Conference. No modifying action has thus far been taken and in the absence thereof the preexisting rules are to be deemed controlling.

Reversed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN — 6.

*For affirmance* — None.