Nicola **SCHIAVONI**

v.

**HARFORD MUTUAL INSURANCE COMPANY.**

**Civ. A. No. 71–1161.**

United States District Court, E. D. Pennsylvania.

Feb. 11, 1974.

John D. DiGiacomo, Easton, Pa., for plaintiff.

Stephen A. Cozen, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

The question in this case is whether a homeowners insurance policy provides workmen's compensation protection for a domestic. It comes before the court on cross motions for summary judgment.

The defendant issued a homeowners policy of insurance to the plaintiff for his residence at 703 Davis Street, Easton, Pennsylvania, effective December 1, 1964. Plaintiff subsequently requested and received endorsements to effect additional coverage at 33 N. 9th Street and 2141 Hay Street, both properties also located in Easton, Pennsylvania.

On or about June 14, 1966, while the policy was still in effect, the plaintiff hired Mrs. Anna R. Azzolina as a housekeeper. On June 17, 1966, Schiavoni took his wife and Mrs. Azzolina to his summer residence in Seaside Heights, New Jersey. On August 14, 1966, while performing services for plaintiff, Mrs. Azzolina allegedly sustained injuries to her back. Mrs. Azzolina brought an action against Schiavoni in New Jersey under the provisions of the New Jersey Workmen's Compensation Act, and eventually recovered an award of $9,415.43.

Plaintiff thereafter brought suit against defendant in the Court of Common Pleas of Northampton County for $10,140.43 ($9,415.43 award plus $725. cost of defense of action), alleging breach of contract for failing to defend and pay the judgment previously entered against him. The defendant removed to this court pursuant to 28 U.S.C. § 1441.

Insurance policies are contracts. Generally, issuing companies construct them of three components:

(1) *The Insuring Agreement:* a general statement which sets forth the undertaking of the insurer for the policyholder;

(2) *The Exclusions:* a series of limitations, or statements of specific risks for which there is no coverage;

(3) *The Conditions:* a series of definitions, requirements, explanations, and basic assumptions.

In addition, it is common practice to attach endorsements or riders to the basic three-part policy. A rider may change the basic policy by amending one or more of its three primary components, may limit or provide additional benefits, or be a separate policy complete in itself.

To all of this, there is attached a series of "Declarations" which identify the insured, his broker, the premium, the types of coverage, etc. The grand total is a series of pages, printed in small type, full of technical phrases, difficult language, and concepts foreign to all but insurance experts. For any one not a specialist, reading a policy of this type is a linguistic adventure, and understanding any considerable portion of it a doubtful possibility.

The policy which defendant issued to plaintiff consisted of eight pages. Section I gave protection against loss of his home and appurtenant structures by fire, lightning, and other perils, insured his personal property, and made provision for additional living expenses to cover a period if his house could not be occupied because of damage it had suffered. Section II protected against lia-

bility arising from accidents involving other persons or their property and provided for medical payments to those injured. In this case, we are concerned with coverage under this latter portion of the policy, Section II.

Defendant contends that its homeowners insurance policy provided coverage at plaintiff's *principal* residence, and those *secondary* residences properly endorsed. Since plaintiff's Seaside Heights residence was not properly endorsed, defendant asserts there was no homeowners coverage there. However, an examination of the policy makes it clear that liability for bodily injury is not limited to incidents that occurred at plaintiff's residence in Easton.

Mrs. Azzolina was a domestic. The General Conditions of the policy define a Residence Employee as "an employee of an Insured, whose duties are in connection with the ownership, maintenance or use of the premises . . ., or who performs elsewhere duties of a similar nature . . . " By premises, the policy means those described in its Declarations, plaintiff's Easton address.[1] Not only may a residence employee perform duties "elsewhere" than at the named premises, but in addition, under the Insuring Agreements relative to bodily injury, the policy provides for medical payments, i. e., Coverage F, for each person who sustains injury through accident:

"(a) while on the premises with the permission of an Insured, or

(b) while elsewhere if such bodily injury . . . is sustained by a residence employee and arises out of and in the course of his employment by an Insured . . . ."

Coverage E, Personal Liability, is provided for all sums which the Insured shall become legally obligated to pay as damages because of bodily injury without restriction as to place of occurrence.

The policy's "Special Exclusions" further the idea that liability coverage is not limited to events which happen on the named premises if residence employees are involved:

"Section II of this Policy Does Not Apply:

(a)(1) . . .

(2) . . .

(3) to any act or omission in connection with premises, other than as defined, which are owned, rented or controlled by an Insured, but this subdivision (3) does not apply with respect to bodily injury to a residence employee arising out of and in the course of his employment by the Insured;"

This double exclusion, that is, an exclusion from which residence employees are excluded, means that coverage is provided as to residence employees that would be denied so far as others would be concerned. Thus, the insuring agreement, general conditions, and special exclusions all indicate that protection from a claim by Mrs. Azzolina was being provided for an accident which took place "elsewhere." so long as her duties were in connection with the ownership, maintenance or use of that property. Nothing indicated "elsewhere" could not be Seaside Heights, New Jersey.

Defendant points out that Mrs. Azzolina never performed any services in Pennsylvania for plaintiff, and thus her duties in Seaside Heights were not similar to any she had performed at the "premises," plaintiff's home in Easton.[2] This is not necessarily determinative, for it is not uncommon for a person to

---

1. The additional properties specifically covered by endorsement are included within the definition for "premises."

2. In depositions, however, plaintiff testified that Mrs. Azzolina had performed some domestic service in Easton for part of a day (Plaintiff's deposition of December 2, 1971, p. 13–14).

be hired to perform principally at one location, and yet his first duties are performed at a different location. Plaintiff asserts that Mrs. Azzolina was hired as a fulltime housekeeper, with her principal place of employment in Easton (where she lived and was hired). Yet, because she was hired during the summer, her first duties were performed at Schiavoni's seashore residence. The testimony of both Mrs. Azzolina and Schiavoni, at a hearing before the Court of Workmen's Compensation, Warren County District, New Jersey, is inconclusive on this matter, and is of no help in determining at which premises Mrs. Azzolina was a "residence employee."

■■ It is black letter law that on a motion for summary judgment there must be no genuine issue of fact to be resolved by the Court. See Lockhart v. Hoenstine, 411 F.2d 455 (3rd Cir. 1969); Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016 (3rd Cir. 1942); Toppi v. United States, 327 F. Supp. 1277 (E.D.Pa.1971). Properly viewed, the pleadings and affidavits show that there is at least an issue of fact as to whether or not Mrs. Azzolina was a residence employee of the Easton, Pennsylvania, premises.

■ There is also a material issue of fact as to whether or not special Exclusion (d) bars plaintiff's claim. This exclusion says: "Section II of this Policy Does Not Apply:

(d) under Coverages E and F [liability for bodily injury and provision for medical payments], to bodily injury for any person (1) if the Insured has in effect on the date of the occurrence a policy providing workmen's compensation or occupational disease benefits therefore, or (2) if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation or occupational dis-

ease law, but this subdivision ˋ(2) does not apply with respect to Coverage E unless such benefits are payable or required to be provided by the Insured."

In Gerhardt v. Continental Insurance Co., 48 N.J. 291, 225 A.2d 328 (1966), the New Jersey Supreme Court, in interpreting the same exclusionary clause in a homeowners policy as is involved in the instant case, held that there was a duty to defend in a workmen's compensation proceedings. In Caldwell v. Aetna Casualty and Surety Company, 107 N.J.Super. 456, 258 A.2d 900 (1969) the New Jersey Superior Court construed *Gerhardt* as follows:

"We read *Gerhardt* . . . to hold that a homeowner's policy in form such as this one, while technically not extending workmen's compensation coverage for injury to a domestic employee of the homeowner sustained under circumstances calling for compensation under the workmen's compensation law of this State, will nevertheless be construed to afford such coverage to the generality of purchasers of such policies because of the ambiguity of the policy in that regard to the average lay reader of the policy language. However, the court makes clear that the company's intent not to extend such coverage will be vindicated if prominent notice of absence of the coverage is affixed to the face of the policy or otherwise brought home to the assured (48 N.J. at 298, 225 A. 2d 328). It is, moreover, implied in the opinion, and indeed a logical corollary of its rationale, that a purchaser of the standard form policy involved in *Gerhardt* and here, who is affirmatively shown to realize he is not getting compensation coverage in buying the policy, will be held not to obtain it."

Plaintiff's deposition testimony, according to defendant's interpretation, affirmatively establishes that plaintiff

knew that he did not have workmen's compensation coverage:

Q. Had you ever obtained workmen's compensation policies of insurance at any time prior to August, 1966, whether in Pennsylvania or New Jersey?

A. . . . I didn't because I didn't have no housekeeper who worked for me, so I didn't need.

Q. Did you ever discuss with [insurance broker] obtaining workmen's compensation policies in Pennsylvania?

A. No, because I didn't need any.

However, Mr. Schiavoni had also testified that the agent from whom he obtained his homeowners policy told him it would provide coverage no matter where he went and specifically it would cover a servant hired in Pennsylvania who performed services in New Jersey. Mr. Schiavoni also stated he had tried to get a homeowners policy in New Jersey but was told he could not do so because he had such a policy in Pennsylvania. (Deposition, December 2, 1971, pp. 21–22 and 7–8.)

This type of testimony, as in *Caldwell*, is inconclusive. Mr. Schiavoni seems to be saying that he thought he had coverage for workmen's compensation, tried to get additional coverage, and had never discussed getting workmen's compensation coverage. Added to this uncertainty is the fact that Mr. Schiavoni cannot read English. Thus, a factual question remains as to whether or not the assured has been *affirmatively* shown to realize that the homeowner's policy does not provide workmen's compensation coverage.

Defendant contends that this matter is governed by the law of Pennsylvania since the insurance policy was delivered to plaintiff in Easton. It is therefore asserted that *Caldwell* and *Gerhardt* should be ignored. However this may be, the Courts of Pennsylvania look no more kindly at ambiguous exclusionary phrases than do the Courts of New Jersey. In Sykes v. Nationwide Mutual Insurance Co., 413 Pa. 640, 198 A.2d 844 (1964), the Supreme Court of Pennsylvania commented upon an exclusionary clause which the defendant asserted denied death benefits to those covered by workmen's compensation, as follows:

"This paragraph would most assuredly never take a prize in a school of expression for clear and crystalline prose. Ambiguity runs though it like ink poured into a fish bowl, clouding the identity of its swimming occupants. From this clouded bowl of language the insurance company fishes up the conclusion that the exclusion clause was intended to allow coverage only in the event of certain factors which are absent here. The insurance company maintains that the bleary paragraph excludes coverage in any case where the beneficiary receives workmen's compensation.

"If this interpretation be correct, the query naturally arises as to why the insurance company did not specifically state that if the named beneficiary receives workmen's compensation no insurance benefits are payable. This could have been spelled out very simply, and the door to insurance benefits would have closed automatically, definitively and finally on any claim for coverage once it was admitted that workmen's compensation benefits flowed from the death of the insured."

A similar question is appropriate here: if the defendant did not intend to provide coverage for liability arising from workmen's compensation benefits, why did it not say so in simple words about which there could be no misunderstanding?

In conclusion, both motions for summary judgment must be denied because there remain material issues of fact: first as to whether or not Mrs. Azzolina

was a "residence employee" of the Easton, Pennsylvania premises, and second, as to whether or not Special Exclusion (d) bars plaintiff's claim.