947 A.2d 168 (2008)
400 N.J. Super. 307
Frank DiMISA, Judy Morris, Beth Thomas-Edwards, each individually and as partners and on behalf of 61 East Main St., a general partnership, Plaintiffs-Appellants,
v.
Ronald ACQUAVIVA, R.E. Investors Ltd., Inc., and Christopher Acquaviva, Defendants-Respondents.
Docket No. A-0993-06T3.
Superior Court of New Jersey, Appellate Division.
Submitted November 28, 2007.
Decided May 16, 2008.
Blank Rome LLP, Cherry Hill, for appellants (John J. Pribish and Virginia G. White, of counsel and on the brief).
Rosner Nocera & Ragone, New York City, for respondents (Eliot L. Greenberg and Anna S. Park, on the brief).
Before Judges AXELRAD, PAYNE and MESSANO.
The opinion of the court was delivered by
PAYNE, J.A.D.
In this appeal, we are called upon to determine whether attorneys' fees incurred in setting aside a judgment against a partnership on its note secured by a mortgage, improperly procured by the son of a partner through a corporation he had established to accept assignment of the *169 note and mortgage, constitute recoverable compensatory damages that would serve as a foundation for a further claim of entitlement to punitive damages.

I.
The facts of the matter are somewhat complex. Plaintiffs Frank DiMisa, Judy Morris, Beth Thomas-Edwards, and defendant Ronald Acquaviva were general partners in 61 East Main Street, a partnership formed in 1986 to take title to property at that address, located in Holmdel, New Jersey, for use in the operation of a real estate business. At the time of purchase, a loan in the amount of $350,000, secured by a mortgage and note, was obtained from United Jersey Bank. Thereafter, in violation of Article VIII(b)10 of the partnership agreement, precluding the transfer of a partnership interest to a nonpartner, Ronald Acquaviva secretly transferred his partnership interest first to his daughter-in-law, Marsha Acquaviva, and then to his son, defendant Christopher Acquaviva. On November 27, 1998, Christopher, in turn, obtained an assignment of the note and mortgage by the Bank to defendant R.E. Investors Ltd. (REI) by payment of the discounted sum of $83,251.[1] However, the certificate of incorporation for REI, listing Christopher as its sole shareholder and officer, was not filed until January 6, 1999. Funds for the purchase of the note and mortgage assigned to REI were obtained from the estate of Christopher's grandfather with the consent of Christopher's father, Ronald, although it does not appear that either was a beneficiary under the grandfather's will, but only served as co-executors.
In 1998, plaintiffs contacted Summit Bank, successor in interest to United Jersey Bank, to obtain information regarding the payoff amount on the mortgage, and they learned at that time that the Bank no longer held the mortgage to the property. After acquiring the partnership checkbook from Ronald Acquaviva, its possessor, plaintiffs learned that mortgage payments were being made on the partnership's behalf to REI, which plaintiffs were led to believe was an independent corporation, only later learning of Christopher Acquaviva's interest in it through examination of corporate documents ordered from the New Jersey Secretary of State. Payments on the mortgage were made by the partnership to REI from December 1998 through January 2000.
By letter dated January 4, 1999, Christopher Acquaviva informed the partnership that he had been advised "by the holder of the mortgage on 61 East Main Street, that same matured on October 1, 1998 and is now due in full," Christopher further advised the partnership that the mortgage was in default, and although the mortgage holder had accepted payments for November and December 1999, payment in full of a principal balance of $143,131.25 plus interest from December 1, 1998 was now expected. A deadline of February 15, 2000 was set for payment.
In a letter addressed to plaintiffs and Christopher Acquaviva, dated March 20, 2000, counsel for REI informed the partners of a default in loan payments. An ex parte default judgment on the note in the amount of $154,535.95 was obtained on April 18, 2000 in foreclosure proceedings instituted by REI.
*170 In a separate action, on May 2, 2000, plaintiffs filed an application for an order to show cause, supported by a verified complaint against defendants Ronald and Christopher Acquaviva and REI, claiming fraud, breach of fiduciary duty, breach of the partnership agreement, and conspiracy, and seeking an accounting as well as injunctive relief in the foreclosure action. On June 4, 2001, Judge Clarkson Fisher, Jr. granted plaintiff's motion for partial summary judgment, vacating the judgment of foreclosure, dismissing the foreclosure action and declaring the mortgage extinguished.[2] Remaining issues "concerning the monetary relief to which either the plaintiffs or defendants may be entitled" were transferred to the Law Division for resolution. In a September 26, 2001 opinion addressing motions for reconsideration by plaintiffs and by defendants Christopher Acquaviva and REI, Judge Fisher addressed plaintiffs' claim that the partnership should be dissolved, determining that the issue properly should be resolved by arbitration as required by Article XIII of the parties' partnership agreement. Additionally, in a January 25, 2002 order, Judge Fisher required plaintiffs to pay REI the sum of $40,852.19 plus interest at a rate of $9.40 per day, commencing on November 30, 2001, which sum represented the plaintiffs' pro rata share of the balance of the purchase price of the note and mortgage.
Arbitration then occurred before retired Appellate Division judge John Keefe. In a decision dated September 22, 2003, the arbitrator expelled Christopher Acquaviva from the partnership and dissolved it as originally constituted, as of November 27, 1998, awarded Christopher the value of his partnership interest as of that November date together with interest at the rate specified in Rule 4:42-11, and permitted the partnership to be reconstituted and continued in the same name with plaintiffs as partners. The arbitration award was confirmed by order of April 8, 2004, entered by Judge Quinn. When reaching his decision in the matter, Judge Quinn observed:
There remains therefore to be litigated the issues of both compensatory and punitive damages. I am satisfied first of all that based on Judge Keefe's arbitration ruling, that at least a prima facie case has been shown and demonstrated for the entitlement by the plaintiffs [to] punitive damages.
I will therefore order that discovery proceed, and that discovery be had in connection with the punitive damage allegations of this complaint, along with discovery to be had on the compensatory damages in this case.
The relief sought [by plaintiffs], in addition to confirming the arbitration award, asks that this Court vacate the order of Judge Fisher dated January 25th 2002 [awarding damages to REI]. I'm going to deny that request at this time.
On September 6, 2006, Christopher Acquaviva and REI renewed their motion for summary judgment, filed previously before Judge Fisher and Judge Quinn, arguing as they had previously that plaintiffs' only damages consisted of the attorneys' fees expended in the matter, that the American Rule precluded the award of such fees, and that in the absence of a *171 compensatory damage award, punitive damages were unavailable. Plaintiffs argued an exception to the American Rule applied, because the tortious conduct of Christopher Acquaviva caused them to incur attorneys' fees in proceeding against a third party, REI.
The motion was decided by a third judge, who in an opinion delivered from the bench on October 12, 2006, disagreed with plaintiffs, determining that the facts presented did not fit within the limited exception to the American Rule recognized in In re Niles, 176 N.J. 282, 823 A.2d 1 (2003), a decision in which the Supreme Court held that "when an executor or trustee commits the pernicious tort of undue influence, an exception to the American Rule is created that permits the estate to be made whole by an assessment of all reasonable counsel fees against the fiduciary that were incurred by the estate"  both those fees otherwise chargeable to the estate involving litigation with third parties and those incurred in litigation with the tortfeasor-trustee. Id. at 293-300, 823 A.2d 1. The judge continued his ruling by observing:
I find that where they talk about a third party in that Supreme Court opinion, it's radically different than what we're dealing with here. The parties really, they were all one and the same. They were all one and the same, all family members. This became a shell game between the various players.
And that plays right into my comments about the fact that all the parties to this were very, very well known real estate professionals. There's no undue influence, nobody took advantage of one another. This is just a situation where you've got to be careful who you get into partnership with.
I still do not understand some of the dynamics of the case. But it doesn't really affect my decision here.
On this basis, the judge found any exception to the American Rule inapplicable, found no compensatory damages to exist, and therefore dismissed the punitive damage claim as to Christopher Acquaviva and REI. Thereafter, Ronald Acquaviva also moved for summary judgment, and that motion was granted.

II.
Plaintiffs have appealed from the judge's summary judgment orders in favor of Christopher Acquaviva, REI and Ronald Acquaviva, arguing (1) the motion judge disregarded the principle of law of the case by ignoring the decisions of Judge Fisher and Judge Quinn allegedly recognizing plaintiffs' right to attorneys' fees; (2) plaintiffs possess damage claims in addition to their attorneys' fees; and (3) plaintiffs are entitled not only to their legal fees as damages, but also money that was paid to REI in the form of monthly mortgage payments and to a reversal of Judge Fisher's January 25, 2002 order requiring plaintiffs to reimburse REI for the balance of the amount spent in purchasing the note and mortgage.
We do not accept plaintiffs' argument that the law of the case precluded the motion judge from entering summary judgment against them. In this regard, plaintiffs assert that both Judge Fisher and Judge Quinn found in their favor on the issue of entitlement to attorneys' fees. However, our review of the record satisfies us that neither judge issued a definitive ruling on the issue. While recognizing a theoretical right to fees, Judge Fisher stated: "Whether ultimately there should be an award or how much it ought to be, I have no idea at the present time." Similarly, Judge Quinn found, on the basis of the arbitration decision, that plaintiffs had established a prima facie case for entitlement to punitive damages, but noted that: *172 "There therefore remains to be litigated the issues of both compensatory and punitive damages," and he ordered that discovery be conducted on those issues. Thus, a foundation for application of the law of the case doctrine is absent in this case. State v. Reldan, 100 N.J. 187, 203, 495 A.2d 76 (1985); Franklin Med. Assocs. v. Newark Public Schools, 362 N.J.Super. 494, 511-12, 828 A.2d 966 (App.Div.2003).
We agree with plaintiffs, however, that the motion judge was mistaken when he entered summary judgment in defendants' favor as the result of his determination that plaintiffs were not entitled to attorneys' fees as a matter of law.
The Restatement (Second) of Torts § 914 provides:
(1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.
(2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.
In his decision of September 22, 2003, arbitrator Keefe determined that Christopher Acquaviva had breached his fiduciary obligations to the partnership stating:
Instead of informing the petitioners that he had purchased the mortgage and offering the petitioners the opportunity of contributing their pro rata share, he concealed the fact with the clear purpose of collecting interest on the indebtedness, and, indeed, the title upon foreclosure. As noted by Judge Fisher, respondent was "disingenuous" at best when he misled petitioners into thinking that it was some unrelated third party who was declaring a default on the mortgage when in fact it was he who was doing so. Thereafter, he obtained a judgment of foreclosure against his own partners. Such actions are a breach of the partner's fiduciary duty to the partnership. . . .
The arbitrator's determination, as a consequence, to expel Christopher from the partnership and to permit its reconstitution without him was confirmed by Judge Quinn.
Despite New Jersey's general adherence to the American Rule that parties should bear their own attorney's fees unless fee shifting is authorized by statute, court rule or contract, the State's courts have long recognized the principle, reflected in § 914 of the Restatement, that one whose tortious conduct requires another to bring or defend a suit against a third party to protect his interests may be assessed the attorneys' fees incurred in the third-party action as an element of damages arising from the tort. See, e.g., State, Dept. of Envtl. Prot. v. Ventron, 94 N.J. 473, 505, 468 A.2d 150 (1983) ("if a third party sues one who as been defrauded, as DEP sued the Wolfs, the defrauded party `may recover from the tortfeasor the expenses of that litigation, including counsel fees, as damages flowing from the tort.'"); Feldmesser v. Lemberger, 101 N.J.L. 184, 186-87, 127 A. 815 (E. & A.1924) (affirming a verdict in favor of contract purchasers of property for attorneys' fees incurred in futilely seeking to enforce the contract, executed fraudulently by a person other than the property owner); Jugan v. Friedman, 275 N.J.Super. 556, 573-74, 646 A.2d 1112 (App.Div.) (permitting recovery of attorneys' fees incurred by judgment creditor in litigation against third-parties to set aside fraudulent transfers by judgment debtor), certif. denied, 138 N.J. 271, 649 A.2d 1291 (1994); *173 Dorofee v. Pennsauken Tp. Planning Bd., 187 N.J.Super. 141, 144-46, 453 A.2d 1341 (App.Div.1982) (permitting a municipal planning board to recover fees and expenses incurred in defending litigation brought by purchasers of land-locked property on the ground, found to be incorrect, that the board had participated in the fraudulent misrepresentations of the seller as to the nature of the property); Hagen v. Gallerano, 66 N.J.Super. 319, 333, 169 A.2d 186 (App.Div.1961) (holding that "the reasonable expense of the litigation to establish the invalidity of [a release of claims against insurer] is an item that is recoverable in a fraud case.").[3]
Further, as Justice Zazzali, writing for the Court in In re Estate of Lash, recognized:
Breach of fiduciary duty is a tort theory, such that attorneys' fees incurred as a result of that breach may be recoverable as a portion of the plaintiff's damages. Wolfson v. Bonello, 270 N.J.Super. 274, 291 n. 12, 637 A.2d 173 (App. Div.1994) (describing breach of fiduciary duty as a tort); Paris of Wayne, Inc. v. Richard A. Hajjar Agency, 174 N.J.Super. 310, 318, 416 A.2d 436 (App.Div. 1980) (same); Sullivan v. Jefferson, Jefferson & Vaida, 167 N.J.Super. 282, 287, 400 A.2d 836 (App.Div.1979) (same); Rodriguez v. Cardona Travel Bureau, 216 N.J.Super. 226, 230, 523 A.2d 281 (Law Div.1986); Restatement (Second) of Torts § 974 ("One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.").
[169 N.J. 20, 27, 776 A.2d 765 (2001).]
As a consequence, in Lash, where a breach of fiduciary duty by the administrator had caused the estate to incur attorneys' fees to litigate its claim against the surety in order to demonstrate the surety's liability for the administrator's defalcation, the Court found the fees were a foreseeable consequence of the administrator's actions, and thus assessable against the administrator as damages. Id. at 27-28, 776 A.2d 765. See also In re Niles, 176 N.J. 282, 293-96, 823 A.2d 1 (2003), upon which the motion judge relied, holding, among other things, that the counsel fees of third parties incurred in litigation by the former trustee in order to avoid inter vivos trust agreements obtained through undue influence by a successor trustee and his mother, initially charged to the estate of the settlor, should be borne by the tortfeasors.[4]
In finding the precedent that we have discussed to be inapplicable, the motion judge appears to have concluded that litigation against REI did not constitute litigation against a third-party for fee-shifting purposes. We disagree. In doing so, we acknowledge that Chancery Judge Fisher premised his determination to extinguish the note and mortgage given by the partnership on grounds of merger, despite the fact that the mortgage was nominally assigned to REI, a non-debtor, thereby recognizing an identity of interest between REI and Christopher Acquaviva. However, in rejecting the contention that REI was a separate juridical entity, Judge Fisher explicitly noted that "[t]he problem with such a contention is that it is raised in *174 a court of equity, where labels or veils may be disregarded in order to do complete justice."
We find it significant that, having resolved the equitable issues raised by the parties, Judge Fisher then transferred the action to the Law Division for determination of plaintiffs' legal right to compensatory and punitive damages. In this legal context, there is no basis for engaging in the corporate veil-piercing undertaken by Judge Fisher in fashioning his equitable remedy.[5] As we recently observed: "`piercing the corporate veil is not technically a mechanism for imposing "legal" liability, but for remedying the "fundamental unfairness [that] will result from a failure to disregard the corporate form."'" Verni ex rel. Burstein v. Stevens, 387 N.J.Super. 160, 199, 903 A.2d 475 (App.Div.2006) (quoting Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 193 (3d Cir.2003)), certif. denied, 189 N.J. 429, 915 A.2d 1052 (2007). In this compensatory damage context, invocation of an equitable remedy avoiding the protections of corporate formation would not remedy any fundamental unfairness inherent in recognizing the corporate form of REI. Rather, it would serve to create an unfairness by depriving plaintiffs of the attorneys' fees to which they are entitled as the result of their suit against the corporate entity, occasioned by the fraud and breach of fiduciary duty of the Acquavivas. We are aware of no precedent that would require us to turn an equitable doctrine on its head so as to reach so inequitable a result. Indeed, precedent elsewhere has established in a case in which a corporate parent unsuccessfully sought to avoid designation as a third party for fee shifting purposes, "even if a party seeking to pierce the corporate veil establishes that a subsidiary is no more than a parent's `alter ego,' the party must establish that equity requires that the two corporations be treated as one." Phil Crowley Steel Corp. v. Sharon Steel Corp., 702 F.2d 719, 722 (8th Cir.1983); see also Ventron, supra, 94 N.J. at 500, 468 A.2d 150 (holding that the purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice). No equitable argument requiring the corporate form of REI to be disregarded can be made in this compensatory damage context.
As a factual matter, there is nothing to suggest that plaintiffs regarded REI as a corporate embodiment of Christopher Acquaviva at least until the time that they received the certificate of incorporation pursuant to their request to the Secretary of State. Nor have we been offered any legal basis for concluding that plaintiffs' chancery action against REI was improper, or that complete relief in that action could have been afforded without its presence. In these circumstances, we discern no principled reason to conclude that the attorneys' fees incurred by plaintiffs in suing REI do not constitute an element of their damages under the precedent that we have discussed. Accordingly, we reverse the orders granting summary judgment to defendants in this matter.

III.
We decline to reach plaintiffs' argument that Judge Fisher erred in failing to require disgorgement of payments made to REI on the mortgage and in requiring *175 them to pay their pro rata share of the remaining balance of the amount expended in procuring the assignment as improperly raised in this appeal. See R. 2:5-1(f)3A. We likewise decline to reach plaintiffs' arguments with respect to additional damage claims. Any such claims as can be supported can be addressed further upon remand.
Reversed and remanded for trial.
NOTES
[1] The maturity date of the note was initially August 2, 1991. As the result of a default in payment on the note, foreclosure proceedings were commenced by United Jersey Bank in an action that was settled on November 30, 1993 by execution of a consent order for settlement that, among other things, extended the maturity date of the note to April 1, 1995. Thereafter, the maturity date was further extended to September 1, 1998.
[2] Finding that, as an equitable matter, the debt had been assigned to a debtor, Judge Fisher declared the debt to be extinguished "because the same person cannot be both debtor and creditor with respect to the same debt. See, e.g., Kessler v. Tarrats, 191 N.J.Super. 273, 284, 466 A.2d 581 (Ch.Div.1983), aff'd, 194 N.J.Super. 136, 476 A.2d 326 (App. Div.1984)."
[3] Although a ruling on the issue of fraud has not been made, prima facie grounds for such a claim exist.
[4] We note that, in In re Estate of Vayda, 184 N.J. 115, 875 A.2d 925 (2005), the Court declined to allow attorney fee shifting "whenever a non-attorney executor is removed because of, among other things, breach of a fiduciary duty and bad faith against co-beneficiaries." However, that case did not involve a third-party action and thus the decision is inapplicable here.
[5] We note as well that disregarding the corporate form of REI was likely unnecessary to the remedy of merger, since REI had not been incorporated at the time of the assignment of the note and mortgage, and thus the de facto assignee of the instruments was Christopher Acquaviva.