969 A.2d 1091

FRANK DIMISA, JUDY MORRIS, BETH THOMAS–EDWARDS, EACH INDIVIDUALLY AND AS PARTNERS AND ON BEHALF OF 61 EAST MAIN ST., A GENERAL PARTNERSHIP, PLAINTIFFS–RESPONDENTS, v. RONALD ACQUAVIVA, DEFENDANT, AND R.E. INVESTORS LTD., INC. AND CHRISTOPHER ACQUAVIVA, DEFENDANTS–APPELLANTS.

Argued January 21, 2009—Decided April 14, 2009.

548

*Eliot L. Greenberg,* argued the cause for appellants (*Rosner Nocera & Ragone,* attorneys).

*John J. Pribish,* argued the cause for respondents (*Blank Rome,* attorneys).

Justice LONG delivered the opinion of the Court.

At issue in this appeal is the so-called third-party exception to the American Rule governing counsel fees, which provides for an award to a litigant who, through the fault of another, is required to institute or defend an action involving a third party. The trial judge ruled that under the facts presented, the third-party exception was inapplicable. The Appellate Division disagreed. *DiMisa v. Acquaviva,* 400 *N.J.Super.* 307, 318, 947 *A.*2d 168 (App.Div. 2008). We granted certification, 196 *N.J.* 464, 957 *A.*2d 1172 (2008), and now reverse. We hold that where the tortfeasor and the putative third party are effectively one, the third-party exception does not apply.

I.

The facts and procedural history of this case are detailed in the decision of the Appellate Division and are incorporated herein as if

more fully set forth. *DiMisa, supra,* 400 *N.J.Super.* at 309–13, 947 *A.2d* 168. For the purposes of this opinion, only the following facts require notation.

In 1986, Frank DiMisa, Judy Morris, Beth Thomas–Edwards (collectively "plaintiffs"), Mary MacKenzie, and Ronald Acquaviva formed 61 East Main Street, a real estate partnership. To finance the purchase of its principal place of business, the partnership obtained a $350,000 loan secured by a note and a mortgage, which were ultimately assigned to Summit Bank. At some time between 1986 and 1998, Ronald secretly transferred his partnership interest to his son, Christopher Acquaviva.[1] On November 27, 1998, without notice to his partners, Christopher purchased the note and mortgage from Summit Bank for the discounted sum of $83,251 in the name of defendant R.E. Investors Ltd. (REI), an entity formed by Christopher but not yet incorporated.

On January 4, 1999, approximately five weeks after purchasing the note and mortgage, Christopher sent the partnership a letter that stated:

> I have been advised by the holder of the mortgage on 61 East Main Street[ ] that same matured on October 1, 1998[,] and is now due in full. At the present time, we are currently in default of the mortgage, and although they have continued to accept payments for November and December, [they] want to know when they can expect payment in full. They have given us a deadline of February 15, 1999[,] before they take any further action. At the current time, the princip[al] balance due is $143,131.25, plus interest from December 1, 1998[,] through whatever day we pay them off. We need to do something with this shortly before any further action is taken.

Christopher did not inform plaintiffs that, in fact, he had become "the holder of the mortgage." Nor did he apprise them of the discounted price he paid for it. Two days later, Christopher filed the certificate of incorporation for REI, naming himself as the sole member of REI's one-member board of directors.

---

[1] Although that transfer violated Article VIII(b)(10) of the partnership agreement—a clause forbidding any partner from transferring his or her interest to a non-partner without the consent of all partners—the parties do not dispute that Christopher was a partner at all times germane to this appeal.

Thereafter, plaintiffs learned that Summit Bank no longer held the mortgage and that the partnership had made mortgage payments to REI. On March 20, 2000, counsel for REI wrote to all of the partners, including Christopher, to notify them that the partnership was in default on the mortgage. Less than a month later, REI instituted foreclosure proceedings that ultimately resulted in a default judgment in the amount of $154,535.95 against the partnership. Subsequently, plaintiffs sought and obtained REI's certificate of incorporation from the New Jersey Secretary of State, thus learning of Christopher's control of REI.

On May 2, 2000, plaintiffs filed a complaint and an application for an order to show cause seeking to vacate the foreclosure judgment. The complaint charged Ronald, Christopher, and REI with breach of fiduciary duty, fraud, conspiracy, and breach of the partnership agreement.[2] Chancery Judge Clarkson S. Fisher, Jr., granted partial summary judgment in favor of plaintiffs, vacating the foreclosure judgment, dismissing the foreclosure action, and declaring the mortgage extinguished. "[B]ecause the same person cannot be both debtor and creditor," Judge Fisher held that the mortgage was extinguished when Christopher, a partner, purchased it in the name of REI, "his solely owned corporation." Nevertheless, the judge required plaintiffs to pay REI the sum of $40,852.19, which represented their pro rata share of the balance of the purchase price of the note and mortgage. Finally, the judge recognized that certain issues arising out of the partnership agreement could "only be resolved in arbitration," and transferred any remaining issues "concerning the monetary relief to which either the plaintiffs or defendants may be entitled" to the Law Division.

The parties proceeded to arbitration. The arbitrator, observing the applicability of the doctrine of issue preclusion, rejected Christopher's challenge to Judge Fisher's findings that he and REI were one and that a merger was effected when he purchased

---

2 Ronald was later dismissed from the case.

the mortgage. The arbitrator expelled Christopher from the partnership; declared the partnership dissolved as of November 27, 1998 (the date Christopher breached his fiduciary duty by purchasing the mortgage); awarded Christopher the value of his interest as of that date; and permitted plaintiffs to reconstitute the partnership under the same name.

The arbitration order was confirmed on April 8, 2004, by order of Judge Joseph Quinn of the Law Division. According to Judge Quinn, once the arbitration order was confirmed, the only issues left for resolution involved plaintiffs' entitlement to compensatory and punitive damages.

Christopher and REI moved for summary judgment on the ground that Judge Fisher had declared that they were one, thus obviating the application of the third-party exception to the American Rule. In the absence of other damages, Christopher and REI urged the judge to dismiss plaintiffs' case in its entirety. Plaintiffs acknowledged Judge Fisher's findings as "the law of the case" and, rather enigmatically, agreed that counsel fees were "the lion's share" of their damages.

The motion was decided by a third judge, Judge John Mullaney, Jr., who declared that no exception to the American Rule applied, and therefore denied counsel fees. Because the judge determined that plaintiffs had sustained no other damages, their compensatory and punitive damages claims were also dismissed. Plaintiffs appealed.

The Appellate Division reversed the trial judge's determination barring the recovery of counsel fees. *DiMisa, supra,* 400 *N.J.Super.* at 314–18, 947 *A.*2d 168. Although acknowledging that the bases of Judge Fisher's merger ruling were the "identity of interest between REI and Christopher" and that REI was not "a separate juridical entity," *id.* at 316, 947 *A.*2d 168, the panel found it significant that Judge Fisher had ruled in equity and then transferred the remaining issues to the Law Division, where, it reasoned, "there is no basis for engaging in the corporate veil[ ]piercing undertaken by Judge Fisher," *id.* at 316–17, 947

*A.*2d 168. In other words, the panel determined that REI could be viewed as a third party for some purposes but not for others, and ultimately concluded that it would be unfair to deny plaintiffs' counsel fees:

[I]nvocation of an equitable remedy avoiding the protections of corporate formation would not remedy any fundamental unfairness inherent in recognizing the corporate form of REI. Rather, it would serve to create an unfairness by depriving plaintiffs of the attorneys' fees to which they are entitled as the result of their suit against the corporate entity, occasioned by the fraud and breach of fiduciary duty of the Acquavivas. We are aware of no precedent that would require us to turn an equitable doctrine on its head so as to reach so inequitable a result.

[*Id.* at 317, 947 *A.*2d 168.]

The panel finally declined to address plaintiffs' arguments regarding errors by Judge Fisher because they were not the subject of the appeal, *id.* at 318, 947 *A.*2d 168 (citing *R.* 2:5–1(f)(3)(A)), and refused to reach plaintiffs' arguments in respect of "additional damage claims," which it concluded "can be addressed further upon remand," *ibid.* The panel therefore reversed Judge Mullaney's grant of summary judgment, and remanded the case for trial on any remaining damages issues, including the amount of plaintiffs' counsel fees. *Ibid.*

Christopher and REI filed a petition for certification, which we granted, 196 *N.J.* 464, 957 *A.*2d 1172, limiting our review to two issues:

1. Notwithstanding the general adherence to the "American Rule" in respect of the award of counsel fees, are plaintiffs entitled to counsel fees as a prevailing party on the ground that defendant R.E. Investors[ ] Ltd., Inc., was a separate and distinct third party to the action? And

2. Did the Appellate Division err in its remand of issues that were not raised by plaintiffs in their appeal to that court?

## II.

Although the American Rule is based upon the notion that our judicial system is best served if parties are responsible for bearing their own counsel fees, *Right to Choose v. Byrne,* 91 *N.J.* 287, 316, 450 *A.*2d 925 (1982) (citing *Gerhardt v. Cont'l Ins. Cos.,* 48 *N.J.* 291, 301, 225 *A.*2d 328 (1966)), our courts have recognized

the third-party exception to the American Rule as discussed in the *Restatement (Second) of Torts* § 914(2) (1979):

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

That exception reflects the principle that those fees incurred in an action against a third party are merely an additional element of " 'damages flowing from the tort.' " *State, Dep't of Envtl. Prot. v. Ventron Corp.*, 94 *N.J.* 473, 505, 468 *A.*2d 150 (1983) (quoting *Dorofee v. Pennsauken Twp. Planning Bd.*, 187 *N.J.Super.* 141, 144, 453 *A.*2d 1341 (App.Div.1982)) (holding defrauded party who is sued by third party may recover counsel fees from tortfeasor as damages flowing from tort); *In re Estate of Lash*, 169 *N.J.* 20, 27–28, 776 *A.*2d 765 (2001) (awarding counsel fees to estate incurred in suit to establish surety's liability for administrator's defalcation); *Jugan v. Friedman*, 275 *N.J.Super.* 556, 573, 646 *A.*2d 1112 (App.Div.) (awarding counsel fees incurred by judgment creditor against judgment debtor's wife and sons to whom judgment debtor's assets were fraudulently transferred, but not those fees incurred against judgment debtor), *certif. denied*, 138 *N.J.* 271, 649 *A.*2d 1291 (1994).

As is evident from those holdings, a prerequisite to an award of counsel fees under the exception to the American Rule is litigation with a third party precipitated by another party's wrongful act. No matter how egregious that wrongful act, in the direct action between a plaintiff and a defendant, each party bears his or her own fees under the American Rule. It is only the requirement of litigation against a stranger that calls the exception into play. *See, e.g., Jugan, supra*, 275 *N.J.Super.* at 573, 646 *A.*2d 1112 ("[A]lthough [plaintiff] may not recover his litigation expenses for litigating with [defendant] to establish that his transfers were fraudulent, he is entitled to reimbursement for reasonable attorneys' fees expended in litigating with third parties, including the other defendants, to void or set aside the transfers.").

In this case, plaintiffs argued before Judge Fisher that REI and Christopher were one. Indeed, the gravamen of plaintiffs' claim was that Christopher breached a fiduciary duty to his partners when he purchased the mortgage in the name of REI. Accepting plaintiffs' arguments, Judge Fisher ruled that there was an identity of interest between Christopher and REI and thus declared the mortgage extinguished because Christopher, under the guise of REI, became both debtor and creditor. Importantly, had REI been a legitimate third party, there would have been no basis to afford relief to plaintiffs. The Appellate Division acknowledged as much and yet rejected Judge Mullaney's conclusion that REI was not a third party for fee-shifting purposes. *DiMisa, supra,* 400 *N.J.Super.* at 316, 947 *A.*2d 168. As we have said, the Appellate Division's analysis was that an entity can be a third party for some purposes but not for others, a notion with which we are in general agreement.

However, although we certainly can conceive of a case in which entirely distinct legal claims might justify such differential legal analyses, that is not what is before us. Plaintiffs succeeded in this litigation before Judge Fisher based on the identity of interest between Christopher and REI. What was before Judge Mullaney was not a theoretically distinct legal claim, but the question of who would bear the attorneys' fees incurred in connection with that successful outcome. As in all counsel-fee cases, that analysis was not untethered from, but deeply, if not entirely, dependent on the merits of the case. It would indeed be anomalous if the theory that underlay the sole substantive issue in the case and that gave plaintiffs the relief they sought was to be disregarded in determining whether counsel fees should be awarded.

To be sure, Christopher left much to be desired as a partner and no one could approve of his chicanery. However, what he did, as Judge Fisher found, was to act wrongfully through REI. That makes REI the instrument of Christopher's deceit, not a separate and distinct third party. Thus, we disagree with the Appellate Division's conclusion that plaintiffs were entitled to an award of

counsel fees for suing REI, an alter-ego of Christopher, in a single litigation. Whatever REI was, it was not a third party under *Ventron* or its progeny, and we reverse the Appellate Division's contrary conclusion.

## III.

We turn briefly to Christopher and REI's claim that the Appellate Division improperly remanded issues decided by Judge Fisher for trial, despite its recognition that those issues were not before it on appeal. That argument is based upon a misreading of the panel's opinion.

Indeed, the Appellate Division expressly acknowledged that the arguments regarding disgorgement and pro rata contribution were improperly raised in the appeal, insofar as they related to rulings by Judge Fisher, whereas the notice of appeal reflected only a challenge to Judge Mullaney's summary judgment decision. *Di-Misa, supra,* 400 *N.J.Super.* at 318, 947 *A.2d* 168 (citing *R.* 2:5-1(f)(3)(A)). In light of the panel's express recognition of the Rule prohibiting consideration of unappealed issues, it is clear that it did not remand any issue decided by Judge Fisher.

We note that the matters actually remanded arose out of Judge Mullaney's grant of summary judgment dismissing plaintiffs' complaint. Although not directly stated, the Appellate Division apparently concluded that plaintiffs' "additional damage claims" that had been rejected by Judge Mullaney required sorting out at trial. *Ibid.* Those issues were not the subject of our grant of certification, *see supra* at 553, 969 *A.2d* at 1095, and thus do not warrant our intervention, *R.* 2:12-11.

## IV.

The judgment of the Appellate Division is affirmed in part and reversed in part. The trial judge's order denying counsel fees is reinstated; plaintiffs' remaining damage claims are remanded.

Justice ALBIN, dissenting.

I believe that the corporate entity, which was created by Christopher Acquaviva to perpetrate a fraud on his business partners, should be liable for the victims' legal fees. Therefore, I would affirm the Appellate Division substantially for the reasons expressed in Judge Payne's thorough and well-written opinion.

*For affirmance in part/reversal in part/reinstatement/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, WALLACE, RIVERA–SOTO and HOENS—6.

*For affirmance*—Justice ALBIN—1.